Submitted on brief September 2, affirmed September 16, rehearing
denied October 14, motion to retax costs denied December 23,
1919.

# PORTLAND *v.* TRAYNOR.

# PORTLAND *v.* KITCHEN.

### (183 Pac. 933; 186 Pac. 54.)

**Health — Ordinance to Protect Health With No Relation to the
Matter Unconstitutional.**

1. An ordinance enacted to protect the public health, but which
has no real or substantial relation to the subject matter, and is an
unreasonable and unwarranted interference with a lawful business,
is unconstitutional.

**Licenses—Ordinance Giving Officer Arbitrary Powers as to Issuance
Invalid.**

2. Any ordinance which invests in an officer or board arbitrary
power to issue or withhold a license for any trade or profession,
without regard to the qualification of the applicant, is void.

> [As to the validity of an ordinance vesting discretion as to
> its enforcement in a municipal official, see notes in 6 Ann. Cas.
> 749; 13 Ann. Cas. 652.]

**Municipal Corporations—Ordinance Permitting Prohibition of Lawful
Occupation Void.**

3. An ordinance by or under which an occupation lawful, and
not injurious to person, property, or public, when lawfully conducted,
may be absolutely prohibited at the dictation of any public official,
without just cause or reason, is void.

**Licenses—Defense for Operating Soft Drink Establishment Without
License Insufficient.**

4. The contention that the medical examiners of the city are
careless and negligent in the discharge of their duties goes only to
the administration and not to the validity of an ordinance requiring,
as a condition to issuance of a license, medical examination of
persons owning or working in food and soft-drink establishments,
and is not a defense to a charge of having violated the ordinance
by operating such an establishment without a license.

**Municipal Corporations—Ordinance for Licensing Food Establish-
ments Sufficiently Definite.**

5. Ordinance of the City of Portland, No..35,013, providing if the
location of a food establishment is found to be suitable, and in
proper sanitary condition, according to the ordinances of the city
and the regulations of the United States as to plumbing, etc., the
bureau of health shall issue a food establishment permit or license
to the applicant, is definite and certain, though there is no specifi-
cation of what shall constitute physical fitness in an applicant for
license, or suitability in the location.

> [As to grant by city of right to use shops and eating-houses
> for private purposes, see note in 125 Am. St. Rep. 353.]

Municipal Corporations—City can Provide for Regulating Food and
   Soft Drink Establishments by Licenses.

  6.  Under its charter giving the City of Portland power to make
regulations to prevent the introduction of contagious diseases, etc.,
the city had power and authority to adopt its ordinance No. 35,013,
providing for the licensing of food and soft-drink establishments
on approval of their location, physical examination of the proprietor,
and payment of a fee.

    [As to the validity of regulations affecting ice-cream, see notes
in 41 L. R. A. (N. S.) 150; L. R. A. 1917B, 207]

MOTION TO RETAX COSTS.

Municipal Corporations—City Entitled to Costs in Prosecution for
   Violation of Ordinance.

  7.  Under City of Portland Charter 1903, Sections 332, 333, 336,
retained in charter of 1913 as ordinances, and under Sections 2494,
2498, L. O. L., city prosecuting defendants in municipal court for
violation of ordinance *held* entitled upon judgment of conviction
being affirmed by Circuit and Supreme Courts, to recover from de-
fendants, as costs and expenses, attorney's fees and expenses of brief.

From Multnomah: ROBERT TUCKER and GEORGE W.
STAPLETON, Judges.

In Banc.

Inasmuch as the legal questions involved in both
cases are very similar, for the purposes of the opinion
this and the companion case of *City of Portland* v.
*Catherine Kitchen* will be considered as one. On
January 31, 1919, the City of Portland passed Ordi-
nance No. 35,013, entitled "An ordinance amending
Article XV½ of Ordinance No. 34,046 as amended, and
repealing Ordinance number 34,800, and declaring an
emergency." The first four sections of the ordinance
are as follows:

"ARTICLE XV½.

"Section 1. DEFINITIONS. The term 'food establish-
ment' whenever used in this ordinance shall mean and
include every place in the City of Portland where food
products are sold or offered for sale or served to the
public, or manufactured, produced, concocted, prepared
or cooked for the public.

"The term 'soft drink establishment' whenever used in this ordinance shall be deemed to mean every place in the City of Portland where drinks are sold, manufactured or served or offered for sale to the public.

"The word 'person' whenever used in this Article shall mean any person, firm or corporation, and the masculine pronoun shall include the feminine and the singular number shall include the plural unless otherwise indicated by the text.

"Section 2. LICENSES. It shall be unlawful for any person to open for business, conduct or maintain, or cause to be opened, conducted or maintained, any food establishment or soft drink establishment in the City of Portland without first securing a license therefor as provided by ordinance.

"Section 3. SANITARY CONDITIONS—PERMIT. Any person desiring to secure a food establishment or soft drink establishment license shall make application to the Bureau of Health for inspection of the location where such establishment is intended to be located, which application shall state the exact location of such establishment and the name and address of all persons interested therein, either as owner, proprietor or manager. If, upon investigation such proposed location is found to be suitable for a food establishment or soft drink establishment, as the case may be, and in proper sanitary condition according to the ordinances of the City of Portland and the rules and regulations of the United States with reference to plumbing, water supply, ventilation and cleanliness, the Bureau of Health shall issue to such applicant a permit for such establishment. Such permit shall be presented with the application for a license to conduct such food establishment or soft drink establishment, and no such license shall be issued unless accompanied by such permit.

"Section 4. REVOCATION OF LICENSE. Any license issued hereunder may be revoked for failure to comply with any of the provisions of the ordinances of the City of Portland or the regulations of the United States Government relating to food and soft drink es-

tablishments, and no such license shall be transferable."

Section 5 provides that it shall be unlawful for any individual to be employed or to work in any food establishment without first having obtained a health certificate, or for any employer to hire any individual without such certificate. It is specified that the certificate is to be renewed quarterly and that no certificate more than three months old shall be recognized by any employer. Section 6 of the ordinance is as follows:

"Section 6. EXAMINATION. Any person desiring to secure a certificate of health as herein required shall present himself to the Bureau of Health for examination at least once every three months and if found by said Bureau to be physically fit and free from diseases which are dangerous to the public the Bureau of Health shall issue to such person a certificate of health entitling such person to work in a food establishment or soft drink establishment. Each such applicant for a health certificate shall pay to the Bureau of Health a fee of twenty-five cents for such examination and permit."

The enactment further provides:

"If the bureau of licenses refuses approval of any application it shall at once so notify the applicant in writing and the applicant may appeal to the council within ten days thereafter, and the council shall proceed to hear and determine said appeal and its decision shall be final."

To carry out the provisions of the ordinance the City of Portland was divided into seven districts and inspectors were appointed for each. It was their duty to examine all of the food and soft-drink establishments in the City of Portland, to ascertain whether the owners thereof were complying with the municipal health ordinances in the construction of their buildings and sale of

their merchandise, and in particular to note whether employees coming in contact with soft drinks, groceries, fruit and vegetables with their hands were healthy and free from contagious or infectious diseases. A card-index system was established and after inspection the employees were required to report to the bureau of health and submit to physical examination, for which under the terms of the ordinance a nominal charge was made. If it was found by the inspectors that the premises where the business was to be conducted were sanitary and complied with the ordinances of the city, a license was then granted to conduct the business upon the payment of an annual fee. If upon examination an employee was found to be free from contagious or infectious diseases, a certificate was then issued to him by the bureau of health, authorizing him to handle and sell such merchandise in bulk, as distinguished from canned or carton goods.

The defendant was engaged in conducting a grocery-store in the City of Portland, and refused to obtain a license for his business. A complaint was filed against him in the police court of the city, upon which he was convicted, and appealed to the Circuit Court. In the latter court a jury was waived. The defendant objected to the introduction of any evidence, upon the ground that the complaint did not state facts sufficient to charge a crime; that the ordinance is void for the reason that it is an unnecessary and unwarranted interference with lawful business and violates the provisions of the fifth and fourteenth amendments of the Constitution of the United States and section 20 of Article I of the Constitution of the State of Oregon, in that it grants special immunities and privileges to some, which are not given to all, and confers an arbitrary power upon the city government. The objections

were overruled and the defendant was tried, convicted and sentenced. He appeals to this court.

AFFIRMED. REHEARING DENIED.

For appellants there was a brief submitted by *Mr. J. Le Roy Smith* and *Mr. Wilson T. Hume.*

For respondent there was a brief prepared by *Mr. Walter P. La Roche,* City Attorney, *Mr. E. Y. Lansing* and *Mr. L. E. Latourette,* Deputy City Attorneys.

JOHNS, J.—1-3. We agree with defendant's counsel that an ordinance which is enacted to protect the public health, that has no real or substantial relation to the subject matter and is an unreasonable and unwarranted interference with the conduct of a lawful business, is unconstitutional; that any ordinance which invests in an officer or board arbitrary power to issue or withhold a license for any trade or profession without regard to the qualification of the applicant, is void, and that an ordinance by or under which a lawful occupation, when lawfully conducted is not injurious to the person, property or the public, may be absolutely prohibited at the dictation of any public official without any just cause or reason, is void.

We have carefully read the record and there is no proof of any discrimination by the inspector, or public health officials, of the City of Portland. Indeed, it appears, as a result of inspections, that about 2,500 individuals coming under the provisions of the ordinance have complied with its terms and paid their licenses and that the defendant is the only one who has not. It appears from his own testimony that his chief objection to paying it lies in the fact that he was required to go to the city hall for examination and that he did not

have any particular objection if it could be held in his own place of business.

4. Defendant's contention that the medical examiners are careless and negligent in the discharge of their duties is not supported by the evidence, but assuming that to be true it would go only to the administration and not to the validity of the ordinance and would not be a defense to the charge against him. In the leading case of *Yick Wo* v. *Hopkins,* 118 U. S. 356 (30 L. Ed. 220, 6 Sup. Ct. Rep. 1064, see, also, Rose's U. S. Notes), upon which appellant relies, it appeared that the petitioner had complied with every requisite of the ordinance and of the officers charged with its administration; that notwithstanding such compliance the supervisors withheld the required license from him and 200 others, similarly situated, and that eighty other and different persons were permitted to carry on the same business under similar conditions.

In construing those ordinances that court says:

"They seem intended to confer, and actually do confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a naked and arbitrary power to give or withhold consent, not only as to places, but as to persons. So that, if an applicant for such consent, being in every way a competent and qualified person, and having complied with every reasonable condition demanded by any public interest, should, failing to obtain the requisite consent of the supervisors to the prosecution of his business, apply for redress by the judicial process of *mandamus,* to require the supervisors to consider and act upon his case, it would be a sufficient answer for them to say that the law had conferred upon them authority to withhold their assent, without reason and without responsibility."

And the rule is there laid down that—

"Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." And that "though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution."

That is good law, but there are no such facts in this record.

In the Yick Wo case the petitioner complied with the ordinance and with 200 others was arbitrarily refused a license by the supervisor. In the instant case 2,500 other business men have complied with the ordinance, paid the fee and obtained their license, and the inspectors have examined defendant's premises and the board of health is ready and willing to grant him a license upon payment of the required fee, which the defendant refuses to pay, but wants to do business without a license.

5. He contends that the "ordinance makes no provision or regulation by which the bureau of health is to be guided in determining in what particular the applicant for license shall be 'physically fit' nor what requirements must be met to constitute a grocery store 'a suitable place,'" and cites *Hewitt* v. *Board of Medical Examiners of the State,* 148 Cal. 590 (84 Pac. 39, 113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896). That is a case where the board revoked a license which had been granted and the court held that in legislation providing for the revocation of a

certificate of a person for professional or moral unfitness, the acts or conduct authorizing such forfeiting must be declared with certainty and definiteness and that the acts upon which the board based its decision were not definite and certain. That is not this case. Here, no license had been revoked, and it is only refused because the defendant will not pay the fee, and as we construe it the ordinance in question is certain and definite in its terms. It provides if, upon investigation, the location—

"Is found to be suitable for a food establishment and in proper sanitary condition according to the ordinances' of the City of Portland and the regulations of the United States with reference to plumbing, water supply, ventilation and cleanliness, the bureau of health shall issue to such applicant a food establishment permit."

If the premises comply with the ordinance of the city and the rules and regulations of the government with reference to plumbing, water supply, ventilation and cleanliness, the permit must be granted and the health officer has no right to refuse it. The ordinance of the City of Portland and the rules and regulations of the government in such matters are both definite and certain and the only question which the board of public health has any authority to consider is whether or not the premises or place of business come within such terms and provisions.

The intent is to provide for an inspection of the premises before any business is done and if the inspector makes an unfavorable report the applicant may have the matter further investigated by the city health officer, and if that officer will not grant the permit he still has his remedy by direct appeal to the city commissioners.

It is not within the authority or even the discretion of the bureau of health to grant arbitrarily a permit to one person who has complied with the ordinance, rules and regulations and deny it to another who has complied with them. In the instant case, as to his place of business, there is no claim or pretense on the part of the city that the defendant has not complied with the city ordinance, rules and regulations. The offense consists in his failure and neglect to pay the required license fee, which he admits he had not paid. In *Plymouth Coal Co. v. Pennsylvania,* 232 U. S. 531 (58 L. Ed. 713, 34 Sup. Ct. Rep. 359, see, also, Rose's U. S. Notes), the syllabus recites:

"In determining whether the constitutional rights of a party have been affected by a state statute, the courts will presume, until the contrary is shown, that any administrative body to which power is delegated will act with reasonable regard to property rights."

The purpose and intent of both the City of Portland and the government was to control and to prevent the spread of contagious and infectious disease.

6. Under its charter the City of Portland has the power "to make regulations to prevent the introduction of contagious diseases into the city" and "to secure the protection of persons and property therein, to provide for the health, cleanliness, ornament, peace and good order of the city" and "to exercise within the limits of the City of Portland, all the powers commonly known as Police powers to the same extent as the State of Oregon has or could exercise said power within said limits" and "to make and enforce within the limits of the city all necessary water, local, police and sanitary laws" and the execution of such laws is vested in its board of health and power is also given "to grant licenses with the object of raising

revenue or for regulation or both, for any and all legal acts, things or purposes and to fix by ordinance the amount to be paid therefor, and to provide for the regulation of the same.'' To do this plenary power is vested under the city charter and the execution of that power is vested in the board of health. In *Lieberman* v. *Van De Car,* 199 U. S. 552 (50 L. Ed. 305, 26 Sup. Ct. Rep. 144, see, also, Rose's U. S. Notes), the rule is laid down:

''A state has the right, in the exercise of the police power, and with a view to protect the public health and welfare, to make reasonable regulations in regard to such occupations as may, if unrestrained, become unsafe, or dangerous, and the conferring of discretionary power upon administrative boards to grant or withhold permission to carry on such a trade or business is not violative of the Fourteenth Amendment. There is no presumption that a power granted to an administrative board will be arbitrarily or improperly exercised, and this court will not interfere with the exercise of such a power where the record does not disclose any ground on which the board acted.''

In *State* v. *Briggs,* 45 Or. 366 (77 Pac. 750, 78 Pac. 361, 2 Ann. Cas. 424), the rule is stated that in the regulation and licensing of trades, occupations, callings and professions ''which affect the public welfare, the legislature must enact the law necessary to accomplish the object in view; but it may be carried into execution by some officer or board appointed for that purpose, and such officer or board may be authorized to prescribe the qualifications of those desiring to follow such callings or professions.'' In *White* v. *Holman,* 44 Or. 180, 185 (74 Pac. 933, 1 Ann. Cas. 843), it is said:

"Under a Constitution like ours, any lawful business, the management of which might be injurious to the public, may be regulated so as to limit the place or to prescribe the manner in which it shall be conducted, provided that in doing so no privileges or immunities are granted to any individual or class of persons that shall not equally belong to all citizens upon the same terms."

In *State* v. *Superior Court,* 103 Wash. 409 (174 Pac. 973), it is held that:

"Laws and ordinances creating boards of health and granting wide powers for the effectual carrying out of legislative plan for protecting health must be liberally construed," and "it is within power of legislature, in dealing with problems of public health, to make determination of fact by properly constituted health officer final and binding on public as well as upon courts."

Under its charter the City of Portland had a legal right to adopt the ordinance here involved. It is not for this court to say whether or not the measure should have been enacted; that is a legislative and not a judicial question. The charter also makes it the duty of the bureau of health to enforce such an ordinance and vests it with power to make the necessary rules and regulations for its enforcement.

There is no evidence that the requirements of the bureau of health are arbitrary or unreasonable, or that there was any discrimination in their enforcement. The judgment in each case is affirmed.

AFFIRMED.    REHEARING DENIED.

Motion to retax costs denied December 23, 1919.

MOTION TO RETAX COSTS.

(186 Pac. 54.)

*Mr. Wilson T. Hume* and *Mr. J. Le Roy Smith,* for the motion.

*Mr. Walter P. La Roche,* City Attorney, and *Mr. Lyman E. Latourette,* Deputy City Attorney, *contra.*

In Banc.

McBRIDE, C. J.—The defendants, upon appeal from the municipal court, were convicted in the Circuit Court of a violation of Ordinance No. 34,046 of the City of Portland, and upon appeal to this court the judgments were affirmed: *Ante,* p. 418 (183 Pac. 933). Thereupon the plaintiff filed its cost bills, consisting of the following items:

| Kitchen Appeal. | | Traynor Appeal: | |
|---|---|---|---|
| Clerk's fee | $10 | Clerk's fee | $10 |
| Attorney's fee | 15 | Attorney's fee | 15 |
| Brief | 27 | Brief | 56 |
| Total | $52 | Total | $81 |

The item of $10 clerk's fee in both cost bills was disallowed by the clerk of this court, and the remaining items allowed, whereupon defendants appeal from the decision of the clerk, claiming that under the ordinance of the City of Portland no costs or disbursements are chargeable against any party in a criminal proceeding. We are of the contrary opinion.

By Section 332 of the charter of the City of Portland, passed by the legislature in 1903, and retained in the charter of 1913 as an ordinance, it is provided:

"All proceedings before the court or judge thereof, including all proceedings for the violation of any city ordinance, are governed and regulated by the general laws of the state applicable to the justice of the peace or justices' courts in like or similar cases, except as in this charter otherwise provided. * * "

Section 333 provides:

"All fines, *costs, fees and expenses* taxed against or received from any defendant in a criminal proceeding before the court or judge thereof, either for the violation of a city ordinance or law of the state, shall, when received or collected, be paid by said judge to the treasurer * * ."

Section 336 provides:

"Except as hereinafter stated, appeals may be taken and shall be allowed from final judgments rendered in the municipal court in all actions, both civil and criminal, under the same circumstances on the same conditions, in the same manner, and with like effect, that, under the laws existing at the time of the rendition of any such judgment, appeals may be taken and shall be allowed from final judgments rendered in similar actions in Justices' Courts. Any defendant who is convicted of any crime defined or created by this charter, or of a violation of any ordinance, rule or regulation of the City of Portland, and is sentenced to any imprisonment or to pay a fine exceeding twenty dollars, may, within five days from the date of such conviction and judgment, appeal to the Circuit Court of Multnomah County, by giving to the city attorney a written notice of appeal and filing an undertaking on appeal, with one or more sureties to be approved by the municipal judge in said municipal court, which undertaking shall be to the effect that such defendant and appellant shall pay *all costs* awarded against him on the appeal and render himself in execution of any judgment rendered against him on the appeal; * * ."

In *Ex parte McGee,* 33 Or. 165 (54 Pac. 1091), it was held in substance that the provision first above

quoted imported into the charter of Portland the mode of procedure provided for Justices' Courts, with certain exceptions not material here.   Sections 2494 and 2498, L. O. L., relating to judgments of conviction in Justices' Courts, provide for the recovery of costs from a convicted defendant.

We are of the opinion that by virtue of these provisions, as well as by the provisions of the ordinances above quoted, the material phrases of which we italicize, the respondent is entitled to recover the costs and disbursements taxed by the clerk and his ruling thereon is affirmed.

                        MOTION TO RETAX COSTS DENIED.