[No. 16138.   Department One.   November 30, 1920.]

THE STATE OF WASHINGTON, *on the Relation of Tom Makris, Plaintiff,* v. THE SUPERIOR COURT FOR PIERCE COUNTY, *John D. Fletcher, Judge, Defendant.*[1]   .

CONSTITUTIONAL LAW (114)—EQUAL PROTECTION OF LAWS—LICENSES—REVOCATION AS PROHIBITION OF LAWFUL BUSINESS. The equal protection clause of the Federal constitution and the prohibition of the granting of special privileges, are violated by the provisions in Tacoma ordinance No. 7301 giving the commissioner of public safety, and the city council upon appeal, the arbitrary power, uncontrolled by any prescribed rule of action, to decide who may and may not engage in the business of selling candy and soft drinks, with discretionary power to revoke licenses for disorderly or immoral conduct or whenever the preservation of public morality, health or good order, in the judgment of the commissioner, renders it necessary.

Certiorari to review a judgment of the superior court for Pierce county, Fletcher, J., entered September 30, 1920, denying an injunction to plaintiff to restrain the enforcement of a license law, tried to the court on the merits.   Reversed.

*Frank H. Kelly,* for plaintiff.

*J. Chas. Dennis, Percy P. Brush,* and *Burns Poe,* for defendant.

PARKER, J.—The relator, Makris, commenced an action in the superior court for Pierce county against F. Shoemaker, commissioner of public safety of the city of Tacoma, seeking an injunction restraining him and all persons acting under him from interfering with him, Makris, in the conduct of his store and place of business, kept for the sale of soft drinks and candy, at 1313½ Broadway in that city.   The trial of that action

[1]Reported in 193 Pac. 845.

upon the merits resulted in judgment of the superior court denying Makris the relief prayed for. He now seeks in this court a reversal of that judgment by this review proceeding.

Shoemaker, as commissioner of public safety of the city of Tacoma, has assumed to revoke the license issued by the city to Makris for the conducting of his soft drink and candy business, and also threatens to force Makris to close his place of business. Shoemaker claims that his revoking of the license issued to Makris by the city, and his threatened forcing of Makris to close his place of business, are legally justified by the manner of conducting the business by Makris, and the authority vested in him, Shoemaker, by the license ordinance of the city, providing for the licensing and regulating of such business. In February, 1918, the city passed its ordinance No. 6749 creating a license department in the department of public safety of the city, and providing for the licensing and regulating of various named occupations and businesses. This ordinance provides for penalties by fine and imprisonment for its violation, applicable both to carrying on of the named occupations and businesses without a license therefor, and to the violation of the regulative provisions of the ordinance. In August, 1920, the city passed its ordinance No. 7301 amending § 47 of its general license ordinance No. 6749, providing for the licensing and regulating of soft drink and candy stores, which amendment, in so far as we need here notice its language, reads as follows:

"The application for a license for any business mentioned in this section shall be in writing and shall be signed by the owner or manager of such business. The application shall state the place where the business is to be carried on and the nature of the business there to be conducted. Upon the receipt of such ap-

plication accompanied by the license fee as above provided it shall be the duty of the city clerk to notify the Commissioner of Health and Sanitation and the Commissioner of Public Safety that such application has been made, and the said commissioners shall inspect, or cause to be inspected, the premises where such business is to be conducted. If the premises are found to be in a sanitary condition and to comply in all respects with the provisions of the health and food ordinances of the city of Tacoma relating thereto, and if the premises conform to the building regulations and in no way menace the peace and good order of the community, said commissioners or their representatives shall recommend to the City Clerk that such license be issued.

"The recommendation of the two commissioners shall be indorsed upon such application. In case either or both shall recommend that the license be refused the City Clerk shall return to the applicant the license fee deposited, but if both shall recommend that such license be issued, the City Clerk shall thereupon issue to the applicant a license to conduct the business mentioned in said application at the place therein named. Licenses shall not be transferable. In case the licensee shall move from the location covered by the license to another location in the city, such removal shall by him be reported immediately to the City Clerk. All licenses shall be conspicuously posted in a public place on the premises for which such license was granted.

"The license of any business mentioned in this section may be revoked by the Commissioner of Public Safety in his discretion for disorderly or immoral conduct or gambling on the premises, or whenever the preservation of public morality, health, peace or good order shall in his judgment render such revocation necessary. Such revocation shall be subject to appeal to the City Council, to be prosecuted by filing a written notice with the Council within ten days after the revocation. Upon receipt of such appeal the Council shall appoint a day for hearing the appeal, giving the ap-

pellant at least three days prior notice in writing thereof. The decision of the Council shall be final."

Makris being the possessor of a duly issued license under this ordinance, to carry on the business of selling soft drinks and candy, and having established such a business at 1313½ Broadway in the city, and Shoemaker, as commissioner of public safety of the city, being of the opinion that the business, as conducted by Makris, had become a menace to "the preservation of public morality, health, peace and good order" assumed to revoke the license, evidencing his decision in that behalf by addressing to Makris a letter reading as follows:

"City of Tacoma
Washington
Department of Public Safety.
"Mr. Tom Makris,                     August 26, 1920.
    1313½ Broadway,
        Tacoma, Washington.
"Sir:
"Whereas, in my judgment the preservation of public morality, health, peace and good order render necessary the revocation of your license for conducting a business for the sale of soft drinks at 1313½ Broadway;
"You are hereby advised that said license is revoked, effective today, under the provisions of Section 47 of Ordinance No. 6749 as amended by Ordinance No. 7301.            Very truly yours, F. Shoemaker,
        "Commissioner of Public Safety."

Makris was also then given to understand, though not by formal written notice, that Shoemaker, as commissioner of public safety, would force him to close his place of business.

Counsel for Makris challenged the constitutionality and validity of the ordinance, in so far as it authorizes the commissioner of public safety to revoke his license,

and thereafter force the closing of his place of business. A holding that the revocation provisions of the ordinance are void, and the reasons therefor, if sound, may also demonstrate that the prescribed conditions touching the question of issuing or withholding a license are unconstitutional and void. We are not, however, here concerned with that particular question, since Makris has paid the license fee and received his license, and does not now directly challenge the validity of the ordinance in that particular, evidently being satisfied to waive the question of the validity of the ordinance in that particular, during the period covered by his license.

The argument here made in behalf of Makris is, in substance, that the effect of the provisions of the ordinance authorizing the revocation of the license, is to place in the hands of the commissioner of public safety and in turn in the hands of the city council upon appeal from the commissioner, the arbitrary power, uncontrolled by any prescribed rule of action, to effectively decide who may and who may not engage in, and carry on, the manifestly lawful business of selling soft drinks and candy in the city. As we read the ordinance such is the meaning of its terms. It may be that the authority to revoke the license because of the permission by the licensee, of "gambling on the premises," is a sufficient prescribing of a cause for revoking the license, and that the revocation provisions of the ordinance in so far as that cause alone is concerned might be upheld, if that specified cause for revoking the license be sufficiently separable from the other provisions of the ordinance, to stand alone.

That, however, is not the question before us. That is not claimed as the cause for revoking this license. There is no other specifically prescribed cause for re-

voking the license or specifically prescribed rule of action which limits or controls the commissioner or the city council in deciding the question of revoking the license. This means that the commissioner, and in turn the city council, may, according to their own notions of what is a menace to "the preservation of public morality, health, peace or good order" in each particular case, decide who may and who may not engage in business of this character in the city. In other words, the commissioner is left to determine for himself, not only what acts may have been committed by the licensee, but also whether or not such acts are "disorderly or immoral," or are a menace to the "preservation of public morality, health, peace, or good order" warranting revocation of the license. Manifestly upon appeal to the city council that body is not, by the terms of the ordinance, controlled by any more specifically prescribed rule of action; but like the commissioner, is a law unto itself in each particular case when the question of revocation of a license comes before that body.

Our decision in *Seattle v. Gibson*, 96 Wash. 425, 165 Pac. 109, is practically decisive of this case in principle, in favor of Makris, though the license ordinance there involved sanctioned a somewhat plainer usurpation of arbitrary power than does this ordinance, in that it made no attempt whatever to prescribe any rule touching the question of who should be granted a license and who should be refused a license, to conduct a drug store. It is true, in that decision particular mention is made of the fact that the license might, under the terms of the ordinance, be granted or refused without even an investigation or hearing touching the merits of the application therefor; but the law invoked in support of our conclusion that the ordi-

nance was void, in that "this discretion is purely arbitrary under the ordinance, because no standard of qualifications, nor rule, is fixed upon which an investigation may be made," (using the words of the decision), citing and quoting from *Yick Wo v. Hopkins*, 118 U. S. 356; *County of Los Angeles v. Hollywood Cemetery Ass'n*, 124 Cal. 344, 57 Pac. 153, 71 Am. St. 75; *State v. Mahner*, 43 La. Ann. 496, 9 South. 480; and *State ex rel. Garrabad v. Dering*, 84 Wis. 585, 54 N. W. 1104, 36 Am. St. 948, 19 L. R. A. 858, is, we think, decisive of this case in favor of Makris. All of those decisions were rested upon the principle that an ordinance which authorizes the issuing or withholding of a license to engage in a lawful business, that is, a business which within itself is ordinarily perfectly lawful, and committing to any officer or set of officers the power to decide according to their own notions in each particular case, the question of the propriety of issuing or withholding a license therefor, and thus deciding who may and who may not engage in such business, is authorizing the exercise of arbitrary power in violation of the guaranty of the fourteenth amendment of the constitution of the United States, that "No state shall . . . deny to any person within its jurisdiction the equal protection of the law." In § 12 of article 1 of our state constitution we find the same guaranty, in substance, as follows:

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

Our decision in *Seattle v. Gibson, supra,* and those of the Federal and state courts upon which that decision is rested, render it plain that it is sufficient to

render a law or ordinance void in the light of these constitutional guaranties, if the prescribed manner of administering such law or ordinance results in leaving the question of the propriety of issuing, withholding or revoking a license to conduct an ordinarily lawful business, and thus the question of who may and who may not engage in such business, to the decision of any officer or set of officers, uncontrolled by any prescribed rule of action.

Among the many additional authorities lending support to this view of the law, we note the following:

The case of *City of Elkhart v. Murray,* 165 Ind. 304, 75 N. E. 593, 112 Am. St. 228, 1 L. R. A. 940, is particularly enlightening and persuasive upon this question. In that case there was involved an ordinance of the city requiring the use on street cars of fenders of a particular make, "or some other fender equally as good, to be approved by the common council or its street committee." The ordinance was held void because of the uncertainty of the standard prescribed, in that, whether some other fender than that named was equally as good, was left to the decision of the city officers. In the course of the opinion Chief Justice Monks, speaking for the court, said:

"The ordinance must contain permanent legal provisions operating generally and impartially upon all within the territorial jurisdiction of such city, and no part thereof be left to the will or unregulated discretion of the common council or any officer. If an ordinance upon its face restricts the right of dominion which the owner might otherwise exercise without question, not according to any uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the city authorities, it is invalid, because it fails to furnish a uniform rule of action, and leaves the right of property subject to the will of such authorities, who may exercise it so as to

give exclusive profits or privileges to particular persons."

Numerous authorities are then cited in support of this view. The Chief Justice then proceeding, referring to one of the court's prior decisions, said:

"In *Bessonies v. City of Indianapolis, supra,* at page 197, this court said: 'Without any provision as to the location or management of hospitals, the ordinance attempts to make it unlawful for anyone to establish or conduct one without a license or permit from the common council and board of aldermen; and the granting or refusal of the license or permit is not governed by any prescribed rules, but rests, in such case in the uncontrolled discretion of the common council and board of aldermen. It is apparent that, under the ordinance, if valid, the common council and board of aldermen have the power to grant or refuse the license in any given case at their mere pleasure; and that no one can conduct or maintain a hospital within the city, however harmless or beneficial it might be, except by the consent of the common council and board of aldermen. It is not necessary to suppose that the common council and board of aldermen would abuse the power thus assumed by them, to grant or refuse the license as they might think  .  .  .  for the public good. It is sufficient to say that, if the ordinance is valid, the common council and board of aldermen have it in their power to grant one person a license and refuse another, under the same circumstances. No law could be valid, which, by its terms would authorize the passage of such an ordinance. The twenty-third section of the Bill of Rights provides that 'the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.' What the legislature cannot do directly in this respect, it cannot authorize a municipal corporation to do.' " -

In *Cicero Lumber Co. v. Cicero,* 176 Ill. 9, 51 N. E. 758, 68 Am. St. 155, 42 L. R. A. 696, there was involved the validity of an ordinance of the town, limiting the

use of certain named boulevards to certain named classes of vehicles, and other vehicles by special permission of the town board of trustees. Holding the ordinance void because of the uncontrolled power so vested in the town board to decide what vehicles might or might not be used upon the street, other than those vehicles specifically named, Justice Magruder, speaking for the court, observed:

"By the ordinance of May 23, 1896, all persons are forbidden to take any omnibus or heavy vehicle or any traffic vehicle upon either of the boulevards. therein named, except private wagons conveying families, 'or upon special permission of this board.' The meaning of this provision is, that all traffic vehicles, except private wagons conveying families, are only forbidden the use of the boulevards in case their owners do not obtain the special permission of the board of trustees. In other words, the discretion is lodged with the board of trustees to permit or not to permit traffic vehicles to be used upon the boulevards in question. The ordinance, in so far as it invests the board of trustees with the discretion here indicated, is. unreasonable. It prohibits that which is, in itself, and as a general thing, perfectly lawful, and leaves the power of permitting or forbidding the use of traffic teams upon the boulevards to an unregulated official discretion, when the whole matter should be regulated by permanent local provisions operating generally and impartially. The ordinance is not general in its operation. It does not affect all citizens alike who use traffic vehicles. It is only persons driving traffic vehicles upon the boulevards without the permission of the board of trustees who are subjected to the penalties of the ordinance."

See, also, *Mayor etc. of Baltimore v. Radecke,* 49 Md. 217, 33 Am. St. 239; *Richmond v. Dudley,* 129 Ind. 112, 28 N. E. 312, 28 Am. St. 180, 13 L. R. A. 587; *Walsh v. City of Denver,* 11 Col. App. 523, 53 Pac. 548; *Peginis v. Atlanta,* 132 Ga. 302, 63 S. E. 857, 35 L. R. A. (N. S.)

716; *Newton v. Belger,* 143 Mass. 598, 10 N. E. 464; *Anderson v. Wellington,* 40 Kan. 173, 19 Pac. 719, 10 Am. St. 175; *In re Frazee,* 63 Mich. 396, 30 N. W. 72, 6 Am. St. 310.

Counsel call our attention to, and rely particularly upon, the decision of the Oregon court in *Portland v. Traynor,* 94 Ore. 418, 183 Pac. 933, 6 A. L. R. 1410. That decision, however, deals with an ordinance which was held to prescribe a sufficiently specific rule of action to be followed, in the granting or refusing to grant the license in question. Just what was decided is rendered plain by the portion of the decision reading as follows:

"As we construe it, the ordinance in question is certain and definite in its terms. It provides if, upon investigation, the location 'is found to be suitable for a food establishment and in proper sanitary condition according to the ordinances of the City of Portland and the regulations of the United States with reference to plumbing, water supply, ventilation and cleanliness, the bureau of health shall issue such applicant a food establishment permit.'

"If the premises comply with the ordinances of the city and the rules and regulations of the government with reference to plumbing, water supply, ventilation and cleanliness, the permit must be granted and the health officer has no right to refuse it. The ordinance of the city of Portland and the rules and regulations of the government in such matters are both definite and certain and the only question which the board of public health has any authority to consider is whether or not the premises or place of business come within such terms and provisions. . . .

"It is not within the authority, or even the discretion of the bureau of health to grant arbitrarily a permit to one person who has complied with the ordinance, rules and regulations and deny it to another who has complied with them."

We note that the ordinance there in question contained the seeming general words "suitable for a food establishment"; but as we read that decision those words of the ordinance were held to mean only that the place must be so suitable, measured by the specified conditions.

We do not in our present inquiry take note of decisions which have to do with the granting of licenses for the sale of intoxicating liquors, the maintenance of pool rooms, the practice of professions, or entering upon occupations more or less dangerous to others, looking to the personal qualifications of the licensee. As to such licenses there is necessarily involved some measure of discretion to be exercised by the officer or body charged with the duty of deciding who may or may not engage in such businesses, professions, or occupations. Such cases do not deal with constitutional rights so clearly ascertainable as those drawn in question in this case.

We are not deciding that a business of the nature here in question may not be regulated within reasonable limits through the passage and enforcement of ordinances by the city; but only that the city has not the power, neither can the legislature confer upon it the power, to enact a valid ordinance by the terms of which some officer or set of officers, controlled by no more specifically prescribed rule of action than is found in the revocation provisions of this ordinance, may decide who may or may not conduct the manifestly ordinarily lawful business of a soft drink and candy store. We have not overlooked subd. 33, § 7507, Rem. Code, being a part of what is commonly called the "Enabling Act," authorizing cities of the first class, to which class Tacoma belongs, to frame their own charters, wherein is enumerated one of the powers of such cities as follows:

"To grant licenses for any lawful purpose, and to fix by ordinance the amount to be paid therefor, and to provide for revoking the same."

Nor do we hold such provision to be unconstitutional; for we are quite convinced that it does not mean anything more than that the city may, in a lawful and constitutional manner, provide for the granting and revoking of licenses. *In re Frazee,* 63 Mich. 396, 403.

The judgment of the superior court is reversed and the cause remanded to that court with directions to render judgment enjoining Shoemaker, as commissioner of public safety of the city of Tacoma, from proceeding under the assumed grant of license revoking power contained in ordinance No. 6749, as amended by ordinance No. 7301, or from interfering with Makris or his licensed business by virtue of such assumed grant of power.

We note the allegations and prayer of the complaint in the action in the superior court here on review, that Makris is claiming damages from Shoemaker because of alleged interference with his business by Shoemaker. The effect of the trial court's decision against Makris was to deny this claim of damages. This claim is not pressed here, and we do not find anything in the record that would sustain it; so, in so far as the judgment of the trial court denied that claim, we leave the judgment undisturbed.

HOLCOMB, C. J., FULLERTON, BRIDGES, and MACKINTOSH, JJ., concur.