[No. 16278.  *En Banc.*  April 19, 1921.]

GEORGE VINCENT, *as Executor etc., Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

INJUNCTION (30)—MUNICIPAL CORPORATIONS (325)—LICENSES—RE-VOCATION. Injunction will lie to restrain the improper revocation of an amusement license by the city council, since such action would not constitute a legislative act, even if consummated by means of ordinance or resolution.

CONSTITUTIONAL LAW (114, 133)—EQUAL PROTECTION OF THE LAWS —DUE PROCESS OF LAW — LICENSES — REVOCATION — PROHIBITION OF TRADE OR BUSINESS. Although the city of Seattle as a city of the first class has power, under Rem. Code, § 7507, subd. 33, to grant and revoke licenses, an ordinance providing that "The city council may, at any time, at its discretion, revoke any license issued under the provisions of this ordinance", is void under the 14th amendment to the Federal constitution, and under art. 1, §§ 3 and 12, of the state constitution, on the ground of depriving a person of his property without due process of law, and as permitting arbitrary and discriminatory action.

Appeal from an order of the superior court for King county, Abel, J., entered November 10, 1920, granting a temporary injunction, after a hearing before the court. Affirmed.

*Walter F. Meier* and *Edwin C. Ewing,* for appellants.

*Piles & Halverstadt,* for respondent.

TOLMAN, J.—Respondent, as plaintiff, brought this action to enjoin the city of Seattle and its officers from revoking a license theretofore granted for the operation of certain amusement devices on private property. The city demurred to the complaint but made no other return in response to the show cause order. Upon a hearing the demurrer was overruled, and the city,

[1]Reported in 197 Pac. 618.

electing to stand thereon, a temporary injunction was granted, and the city appeals.

The complaint alleges that the respondent is the duly qualified and acting executor of the last will and testament of Robert Charles Vincent, deceased, who, in his lifetime was the owner of certain lots in the city of Seattle, upon which he had erected and installed a ferris wheel and a merry-go-round, which, with other equipment were of the value of $27,000, and which he conducted as a place of public amusement at a profit, under a license duly issued by the city comptroller after the payment of a fee of $200 therefor, which license by its terms will expire on September 3, 1921. That such amusement devices have at all times been operated in full compliance with the city ordinances; that the place where they are situated is a fit and proper one; that the plaintiff is a fit and proper person to hold and operate such a license; that a substantial good will has been built up, and that the city and the defendant city councilmen threaten to cancel such license and will do so unless restrained, under and by virtue of § 10, of Ordinance No. 36203 of the city of Seattle, which reads:

"Section 10. The city council may, at any time, at its discretion, revoke any license issued under the provisions of this ordinance. Before such revocation, the person holding the license shall be notified in writing that the city council has under consideration the revocation of his license, giving the number and kind thereof. If the holder of such license so desires, he shall be heard in opposition to said revocation before said license is declared revoked.

"Any person, firm or corporation whose amusement license has been revoked, as herein provided, shall not again be licensed to operate or conduct any place of amusement in the city of Seattle for a period of one (1) year.

"The city council may, by resolution, suspend any license issued under the provisions of this ordinance for a period of not more than sixty (60) days."

The complaint further recites that, by such threatened action, respondent's property will be rendered useless, its value destroyed, his profits and good will lost, and that the ordinance quoted is in violation of § 1 of the fourteenth amendment to the constitution of the United States, and §§ 3 and 12 of article 1 of the constitution of the state of Washington, in that it deprives respondent of his property without due process of law, and permits arbitrary and discriminatory action.

The demurrer, which admits all of the facts properly pleaded, seems to raise the question of whether or not, under this state of facts, the city might revoke this particular license so long as, by the terms of the ordinance, other similar amusement devices might be licensed and permitted to operate, as well as the right to injunctive relief against the proposed legislative act, if the act revoking the license be construed as such.

Under the statute, Rem. Code, § 7507, sub-section 33, cities of the first class are given power,

"33. To grant licenses for any lawful purpose, and to fix by ordinance the amount to be paid therefor, and to provide for revoking the same: Provided, that no license shall be granted to continue for longer than one year from the date thereof."

And the city charter recognizes this power in the same language. Sub-section 33 of § 18, article IV, Seattle City Charter. The ordinance pleaded would seem to have been enacted in pursuance of these provisions for the purpose of providing a method by which they shall be carried into effect. So far as appears, this is the only ordinance on the subject of revocation of li-

censes, and purports to give the city council full power to revoke a license without prescribing how its final judgment to do so shall be evidenced. Appellant seems to contend that the city council must, under the terms of the city charter, enact an ordinance in order to revoke the license; but even so, a special ordinance revoking a particular license would be a judgment of revocation rather than a legislative act, and whether the council's action be by ordinance, resolution or otherwise, it would seem, in the light of the ordinance from which we have quoted, that we must hold that this ordinance is the legislative act of the city council upon the subject of the revocation of licenses, and any subsequent action which the city council might take thereunder resulting in the revocation of a particular license would involve a determination of such questions as would necessarily make the act judicial in its nature rather than legislative.

If the city council is proposing to enact a general ordinance fixing a standard and revoking all licenses which do not meet such standard, which we cannot assume from the admitted allegations of the complaint to be the fact, then we find nothing in the restraining order to interfere therewith, and appellant is not aggrieved thereby. Therefore the rule which we have so often recognized that the courts will not enjoin proposed legislative action does not apply here.

Is the ordinance under and by virtue of which the city council was proceeding so arbitrary and discriminatory as to be void under the constitutional provisions referred to? It must be remembered that, unlike the cases involving the sale of intoxicating liquors in which by statute a city is given the sole and exclusive authority to regulate, restrain, license or prohibit the sale within its corporate limits, the operation of a place of

public amusement, on private property, involves nothing which is necessarily inherently evil, and the limit of legislative power thereover is to regulate only. *Seattle v. Gibson,* 96 Wash. 425, 165 Pac. 109; *State ex rel. Schafer v. Spokane,* 109 Wash. 360, 186 Pac. 864. The ordinance here in question is practically identical in its terms with the ordinance considered in the *Gibson* case, and Mr. Justice Mount, speaking for this court, said:

"The ordinance in question here makes no provision for determining the qualifications of an applicant. It does not require the license committee, to whom the petition is referred, to investigate any of the facts stated in the petition of the applicant. The committee may investigate or not as its discretion dictates. In short, the ordinance leaves to the license committee the authority arbitrarily to grant or reject a petition for a license to operate or conduct a drug store and pharmacy. This discretion is purely arbitrary under the ordinance, because no standard of qualifications, nor rule, is fixed upon which an investigation may be made. The ordinance recites that the committee may, in its discretion, investigate any of the matters set forth in the petition, and if it may investigate these matters, in its discretion, it may not investigate them at all, and may report according to its desire."

So here, § 10 of the ordinance purports to give the city council power in its discretion to revoke or refuse to revoke any license as it may see fit, with or without reason, and without reference to the fitness of the licensee; the manner in which he is conducting the business, or the fixing of any standard whatsoever, leaving the council at perfect freedom to exercise favoritism, permit its friends and supporters to engage in the amusement business, and deny that privilege to others.

We have had occasion very recently to review this precise question in *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 Pac. 845, in which case we re-affirmed our holding in the *Gibson* case, and said:

"The argument here made in behalf of Makris is, in substance, that the effect of the provisions of the ordinance authorizing the revocation of the license, is to place in the hands of the commissioner of public safety and in turn in the hands of the city council upon appeal from the commissioner, the arbitrary power, uncontrolled by any prescribed rule of action, to effectively decide who may and who may not engage in, and carry on, the manifestly lawful business of selling soft drinks and candy in the city. As we read the ordinance such is the meaning of its terms. It may be that the authority to revoke the license because of the permission by the licensee of 'gambling on the premises,' is a sufficient prescribing of a cause for revoking the license, and that the revocation provisions of the ordinance in so far as that cause alone is concerned might be upheld, if that specified cause for revoking the license be sufficiently separable from the other provisions of the ordinance, to stand alone.

"That, however, is not the question before us. That is not claimed as the cause for revoking this license. There is no other specifically prescribed cause for revoking the license or specifically prescribed rule of action which limits or controls the commissioner or the city council in deciding the question of revoking the license. This means that the commissioner, and in turn the city council, may, according to their own notions of what is a menace to 'the preservation of public morality, health, peace or good order' in each particular case, decide who may and who may not engage in business of this character in the city. In other words, the commissioner is left to determine for himself, not only what acts may have been committed by the licensee, but also whether or not such acts are 'disorderly or immoral,' or are a menace to the 'preservation of public morality, health, peace, or good order' warranting the revocation of the license. Mani-

festly upon appeal to the city council that body is not, by the terms of the ordinance, controlled by any more specifically prescribed rule of action; but like the commissioner, is a law unto itself in each particular case when the question of revocation of a license comes before that body.''

Since the authorities from other jurisdictions are carefully reviewed in these cases, it seems unnecessary to again discuss them. It is sufficient to say that the great weight of well considered cases support our views, and that the ordinance in question denies that which the constitution gives to every citizen.

The judgment appealed from is affirmed.

PARKER, C. J., MAIN, HOLCOMB, MACKINTOSH, MITCHELL, and MOUNT, JJ., concur.