[No. 39129.    Department Two.    December 14, 1967.]

GEORGE E. TARVER, *Appellant,* v. CITY COMMISSION OF
BREMERTON, *Respondent.**

*Reported in 435 P.2d 531.

*Gordon L. Walgren,* for appellant.

*Gerard N. Fisher,* for respondent.

NEILL, J.—Petitioner George E. Tarver had been a duly licensed taxicab operator in the city of Bremerton until his license was not renewed by order of the Bremerton City Commission. He obtained review of such action of the commission by a writ of certiorari in the superior court which upheld the action of the commission and sustained the validity of the ordinance under which petitioner's license was terminated. Petitioner appeals alleging as error certain factual findings and attacking the constitutionality of the ordinance.

Ordinance No. 1474 of the city of Bremerton provides in part as follows:

Section 1. It is hereby declared to be essential to the public interest that no person shall be authorized or per-

mitted to operate or drive a taxicab within the city limits of the City of Bremerton unless such person shall be of the age of at least twenty-one years, shall be an experienced, able, and careful driver, *and shall be a person of good, moral character and reputation.* (Italics ours.)

Section 2 as amended by Ord. 1657. It shall be unlawful for any person to drive a taxicab for hire in the City of Bremerton without first having applied for and received and being the holder of a valid subsisting taxicab driver's license in the City of Bremerton . . . .

Section 5 as amended by Ord. 1733. If the Chief of Police finds that any person licensed hereunder has been convicted of a criminal violation of federal or state law, or any ordinance of the City of Bremerton or has forfeited bail after posting thereof after arrest for a criminal violation of such law or ordinance and that *such conviction or bail forfeiture established that such licensee is no longer of good moral character and reputation,* or is not a careful and experienced driver, or if the chief of police for any other reason believes that such person is not competent to operate a taxicab within the City of Bremerton, then the chief of police shall make a written report of the circumstances surrounding such matter to the City Commission of the City of Bremerton and shall make recommendations to the City Commission regarding the suspension or revocation of the license of such person. After considering the said report and before revoking or suspending any such license, the City Commission shall order a hearing, and in such case shall notify the licensee of the date of said hearing and of the contents of the report of the chief of police, which said hearing shall be held on a day certain, but shall be not less than ten (10) days from and after the mailing of notice of such hearing to such licensee, and which said notice shall require the licensee to show cause on such date, if any he has, why such license should not be suspended or revoked. The Chief of Police may, in his discretion, suspend any such license for a period not to exceed fifteen (15) days during investigation of such circumstances. If, upon hearing before the City Commission, a majority of the City Commission shall find that the license of the said licensee should be suspended or revoked, it shall be so ordered. *An appeal from such order, suspension or revocation, may be made to the Superior Court for Kitsap County, in the manner provided for under the general*

*laws of the State of Washington.* In case of the revocation of license, the same shall be taken up by the chief of police and cancelled by the City Clerk, and in case of the suspension of a license the same shall be surrendered to the City Clerk and shall be returned to the licensee at the termination of the priod [*sic*] of suspension. (Italics ours.)

Acting pursuant to the ordinance, the Bremerton Chief of Police on June 29, 1965, addressed a letter to the city commissioners advising that "it is my intention not to approve the renewal of his [George Earvin Tarver's] taxicab drivers license as of July 1, 1965." (Mr. Tarver's then current license expired June 30, 1965.) This letter set forth the grounds on which the recommendation was made (conviction of illegal sale of liquor and of driving while intoxicated (not while operating a taxicab)). The letter further states, "I am requesting revocation of the license of this person, completely and finally." On July 1, 1965, the city clerk forwarded a copy of the chief's letter of June 29th to Mr. Tarver and advised him of the time and place of a hearing on the recommendation and stated, "at which time you shall show cause, if any, why such license should not be suspended or revoked." Petitioner appeared at the hearing with counsel and following such hearing the commission approved the recommendation of the chief of police to revoke and refuse to renew petitioner's license.

Petitioner first assigns error to the trial court's findings of fact that he "had complete and timely notice of the action of the Chief of Police and of the hearing" and to its conclusion of law that "The hearing held before the City Commission of the City of Bremerton was made upon due, timely and adequate notice of the content, place and date thereof in the manner and form required by law." Petitioner further contends that, in violation of his rights under the ordinance and therefore in violation of the due process clause of U. S. Const. amend. 14 and of Const. art. 1 § 12, the notice to him failed to mention: (1) the chief's intention to disapprove renewal of petitioner's license, as well as to recommend its revocation; (2) the charges leveled against

him; and (3) all the reasons for revocation and nonrenewal of his license. It is important to note that petitioner does not contend that the notice and hearing requirements established by the ordinance are illegal; rather, he argues that such requirements were simply not followed in the case at bar. After reviewing the record, however, we are of the opinion that the evidence amply supports the trial court's findings as to this issue.

Petitioner also assigns error to the trial court's finding that "any objection as to the form, content and timeliness of notice and hearing were waived by Petitioner's appearance before said City Commission and participation in said proceeding with his counsel of record." Petitioner argues that he cannot be held to have waived his right to object since (1) he was required to attend the hearing, (2) he never received notice prior to the hearing of either the subject matter of the hearing or the information on which such action would be based, and (3) he raised timely objections at the hearing itself. Since we have, however, sustained the trial court's findings that petitioner, in fact, received timely and proper notice, this assignment of error must fail.

Petitioner's final argument is that the ordinance is arbitrary and capricious and in violation of the due process clause of U. S. Const. amend. 14 and Const. art. 1 § 12. He contends that (1) the ordinance establishes no definite standard to guide the chief of police or respondent in deciding when to revoke a license; (2) the chief of police's own arbitrary and capricious notions determine which violations of law are sufficient to render a person morally irresponsible and unfit to hold a license; (3) the ordinance does not require that the violation of law to be considered must in any way relate to taxicab driving; and (4) taxicab driving is not so "fraught with injurious results" as to come within the scope of those cases permitting license revocation on the ground of bad moral character alone.

In support of his final argument, petitioner relies upon *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 302, 193 Pac. 845, 12 A.L.R. 1428 (1920), in which we held that

[A]n ordinance which authorizes the issuing or withholding of a license to engage in a *lawful business, that is, a business which within itself is ordinarily perfectly lawful,* and committing to any officer or set of officers the power to decide according to their own notions in each particular case, the question of the propriety of issuing or withholding a license therefor, and thus deciding who may and who may not engage in such business, is authorizing the exercise of arbitrary power in violation of the guaranty of the fourteenth amendment of the constitution of the United States . . . . (Italics ours.)

The business activity involved in *Makris, supra,* was the selling of candy and soft drinks. The ordinance there in question empowered the commissioner of public safety to revoke the license involved " 'for disorderly or immoral conduct . . . whenever the preservation of public morality, health, peace or good order shall in his judgment render such revocation necessary.' " (p. 298)

▮▮▮ The wisdom and propriety of a municipal ordinance establishing certain standards, regulations or controls for a particular business or occupation is not a question for this court to decide; rather, the scope of our review is limited to determining whether the ordinance is within the scope of municipal power and whether the ordinance and the actions taken pursuant thereto are arbitrary, capricious or unlawful. A review of the prior cases decided by this court indicates that the scope of the state's power to regulate or control the business or occupational activities of its citizens depends in which of the following three general categories the activities involved may be classified: (1) ordinary vocations pursued on private property by private means; (2) social or economic evils, such as gambling or liquor traffic, together with such useful occupations as may, under certain circumstances, become public or private nuisances, because offensive or dangerous to safety, health, etc.; or (3) claims of a private right in, or the extraordinary use of, public property such as streets or parks. *State ex rel. Schafer v. Spokane,* 109 Wash. 360, 186 Pac. 864 (1920).

■ The business activity involved in *Makris, supra,* was clearly within the first category mentioned above, with respect to which we said, quoting *Ex parte Dickey,* 76 W. Va. 576, 85 S.E. 781 (1915):

> "The right of a citizen to pursue any of the ordinary vocations, on his own property and with his own means, can neither be denied nor unduly abridged by the legislature, for the preservation of such right is the principal purpose of the constitution itself. In such cases, the limit of legislative power is regulation, and that power must be cautiously and sparingly exercised . . . ." *State ex rel. Schafer v. Spokane,* 109 Wash. 360, 362, 186 Pac. 864 (1920).

See also, *Seattle v. Gibson,* 96 Wash. 425, 165 Pac. 109 (1917) (regulation of drug store); and *Vincent v. Seattle,* 115 Wash. 475, 197 Pac. 618 (1921) (regulation of ferris wheel). Petitioner's reliance on *Makris, supra,* is inappropriate because that holding was expressly limited to activities within the first category above and has no application to the activities included within the second and third categories. *Makris, supra,* at 307. We are of the opinion that taxicab driving is not an occupation to which the holding in *Makris, supra,* is applicable; rather, that occupation is clearly within the category of extraordinary use of public property for private gain and may also be properly classified within the category of occupations susceptible of becoming a nuisance, offensive or a hazard to public safety. In the words of the trial court's finding of fact No. 9:

> That the occupation of operating a taxicab is such an occupation as is fraught with the possibility and probability of injurious results without regulation and . . . that the licensing thereof can be denied an applicant if found not to be of good moral character. That the business of operating a taxicab can be dangerous to others not only because of traffic hazards but in addition to that because of moral danger as is amplified in the instant record of Petitioner in which it is disclosed that Petitioner has been twice convicted of illegal sale of liquor.

■ As to that category of businesses and occupations which are inherently, or at least susceptible of becoming,

nuisances or hazards to health, we have consistently held that " 'All of these fall within the broad power of prohibition or suppression, some wholly and absolutely and others conditionally.' " *Schafer, supra,* at 363. Such occupations require "looking to the personal qualifications of the licensee. As to such licenses there is necessarily involved some measure of discretion to be exercised by the officer or body charged with the duty of deciding who may or may not engage in such businesses, professions, or occupations." *Makris, supra,* at 307. See also, *State ex rel. Sayles v. Superior Court,* 120 Wash. 183, 206 Pac. 966 (1922) (regulation of pool halls); *State ex rel. Reedhead v. Olympia,* 122 Wash. 239, 210 Pac. 371 (1922) (regulation of pool halls); and *State ex rel. Puyallup v. Superior Court,* 50 Wash. 650, 97 Pac. 778 (1908) (revocation of liquor license). With respect to the category of activities which involve claims of a private right in public property, we have said (*Schafer, supra,* at 363, quoting *Ex parte Dickey, supra*):

"Such properties are devoted primarily to general and public, not special or private, uses, and they fall within almost plenary legislative power and control. In them, all citizens have the usual and ordinary rights in an equal degree and to an equal extent. In the regulation thereof, the legislature cannot discriminate. But, as regards unusual and extraordinary rights respecting public properties, its power or control and regulation is much more extensive. Such rights are in the nature of concessions by the public, wherefore the legislature may give or withhold them at its pleasure. It may give them for some purposes and withhold them for others, and in the case of those given, it may, upon considerations of character, quality, and circumstances, discriminate, permitting some things of a general class or nature to be done and refusing to permit others of the same general class to be done, or extending the privilege to some persons and denying it to others because of differences of character or capacity.

"The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary

right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader; the right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities."

See also, *Baxter-Wyckoff Co. v. Seattle,* 67 Wn.2d 555, 408 P.2d 1012 (1965); *Hadfield v. Lundin,* 98 Wash. 657, 168 Pac. 516 (1917).

■ Thus, regardless of whether taxicab driving is viewed as an extraordinary use of public property for private gain or as an occupation potentially deleterious to the public, the city of Bremerton, in controlling the operation of taxicabs on its streets, clearly had the power to require all taxicab drivers to be of good moral character. Even though the city may establish standards for the licensing of taxicab drivers or for the revoking of such licenses, petitioner would urge this court to require a degree of definiteness and precision in the establishment of such standards which is simply not possible or practicable in view of the nature of the occupation to be controlled. As the Supreme Court stated in *Hall v. Geiger-Jones Co.,* 242 U. S. 539, 553, 61 L. Ed. 480, 37 Sup. Ct. 217 (1916):

[I]t is certainly apparent that if the conditions are within the power of the State to impose, they can only be ascertained by an executive officer. Reputation and character are quite tangible attributes, but there can be no legislative definition of them that can automatically attach to or identify individuals possessing them, and necessarily the aid of some executive agency must be invoked.

*Hall, supra,* involved a state "Blue Sky" law which, among other things, empowered the commissioner to revoke the license or refuse to renew it upon ascertaining that the licensee "is of bad business repute."

■ Petitioner argues that, in reality, no standard is established to guide the city in determining whether to revoke a license because (1) the ordinance does not define

precisely what violations are sufficient to classify a person as being no longer morally responsible; and (2) the ordinance does not specifically require that the violations either have occurred while operating a taxicab or relate in any way to the driving of a taxicab. He cites as an example of the possible arbitrary and capricious application of the standards contained in the ordinance the revocation of a license merely because the licensee had violated a zoning ordinance. But we recently held in *Seattle v. Long*, 61 Wn.2d 737, 740, 380 P.2d 472 (1963), that

> A person may not urge the invalidity of an ordinance unless he is harmfully affected by the particular feature of the ordinance alleged to be an invalid exercise of the police power. A litigant who challenges the validity of an ordinance must claim infringement of an interest peculiar and personal to himself, as distinguished from a cause of dissatisfaction with the general framework of the ordinance. *State v. Lundquist*, 60 Wn.(2d) 397, 401, 374 P. (2d) 246 (1962) and cases cited.

The revocation of a taxicab license merely because the licensee had violated some zoning ordinance might well be arbitrary and capricious and therefore unlawful on the grounds that the violation lacked any reasonable relationship to the licensed occupation. This, however, is not the situation involved in the case at bar, since the record discloses that petitioner has been found guilty of driving while intoxicated as well as making illegal sales of liquor.

In some instances, standards such as "trustworthy," "good reputation" or "morally responsible" may well give rise to the possibility that the officer or body, charged with the duty of deciding who shall be allowed to engage in a particular business or occupation, may act in an arbitrary or capricious manner with respect to a particular individual, but the answer to this is that section 5 of the ordinance in question specifically provides that the order of the city commission revoking the license of a taxicab driver may be appealed to the county superior court. Quoting again the words of the United States Supreme Court in *Hall, supra,* at 553-54:

> We are a little surprised that it should be implied that there is anything recondite in a business reputation or its existence as a fact which should require much investigation. If in special cases there may be controversy, those cases the statute takes care of; an adverse judgment by the commissioner is reviewable by the courts. . . .
>
> . . . .
>
> The discretion of the commissioner is qualified by his duty, and besides, as we have seen, the statute gives judicial review of his action. Pending such review we must accord to the commissioner a proper sense of duty and the presumption that the functions entrusted to him will be executed in the public interest, not wantonly or arbitrarily to deny a license to or take one away from a reputable dealer (*Plymouth Coal Co. v. Pennsylvania,* 232 U.S. 531, 545); and, as we have said, in cases where there can be a dispute of fact, the statute provides for judicial review . . . .

Similarly, in *Brown v. Seattle,* 150 Wash. 203, 207, 272 Pac. 517 (1928), relying on *Town of Sumner v. Ward,* 126 Wash. 75, 217 Pac. 502 (1923), we stated ". . . the officer of the municipality is called upon to exercise a discretion of a judicial nature, and his failure to act or his affirmative acts may be reviewed in the courts in case he refuses to exercise his discretion or exercises the same arbitrarily." Admittedly, the aforementioned two cases are factually distinguishable from the instant case in that they both involved ordinary lawful businesses pursued on private property which therefore, unlike the occupation of taxicab driving, were subject only to limited regulation. Nevertheless, the rationale of these cases with respect to the court's power to review the arbitrary or capricious actions of a municipal officer or body is applicable to the case at bar.

Judgment is affirmed.

FINLEY, C. J., HILL, DONWORTH, and HUNTER, JJ., concur.