IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MICHAEL "MICK" HANSEN, | ) | |
| | ) | No. 37698-2-III |
| Respondent/Cross Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MOSES LAKE IRRIGATION AND | ) | UNPUBLISHED OPINION |
| REHABILITATION DISTRICT, a | ) | |
| Washington Municipal Corporation, and | ) | |
| its Directors RON COVEY, MARY | ) | |
| PERRY, KEN KERNAN, JEFF FOSTER | ) | |
| AND BILL BAILEY, and each of them; | ) | |
| and GRANT COUNTY, a Washington | ) | |
| political subdivision and LAURE | ) | |
| GRAMMER, the Grant County Assessor, | ) | |
| DAVE FIREBAUTH, the Grant County | ) | |
| Auditor, and DARRYL PHEASANT, the | ) | |
| Grant County Treasurer, | ) | |
| | ) | |
| Appellants/Cross Respondents. | ) | |

SIDDOWAY, C.J. — The Moses Lake Irrigation District was created almost a century ago to develop and maintain a dam on Moses Lake to store water for irrigation purposes. As land within the District's boundaries was increasingly put to residential and other nonagricultural uses, demand for irrigation waned. Concerned about losing water rights and the lake's recreational and property enhancement values, local residents in the early 1960s supported legislation authorizing the creation of "irrigation and

rehabilitation" districts. Such districts are authorized, in addition to irrigation purposes, to rehabilitate or improve inland lakes and shorelines for the health, recreation and welfare of area residents. The existing irrigation district became the Moses Lake Irrigation and Rehabilitation District (District), and remains the only district of that type in the state.

Irrigation and rehabilitation districts were authorized to specially assess land located in the district in amounts up to $1.00 per $1,000.00 of assessed value without securing authorization by a vote of electors, and the District began to rely on that source of revenue. After the legislature reduced the special assessment limit to $0.25 per $1,000.00 of assessed value without elector approval, the District continued its same method and rate of assessment and, when questioned, defended the assessment in excess of the $0.25 per $1,000.00 in assessed value limit as a rate imposed for delivering irrigation services.

Michael "Mick" Hansen brought the action below to challenge the District's assessments and its allocation of voting rights to members. Through a series of summary judgment rulings, he had partial success. The District appeals the trial court's summary judgment rulings that Mr. Hansen's challenge to District assessments is not barred by Washington's tax anti-injunction act and that rates it imposed were not "reasonable" rates imposed on persons "for whom district service is made available for irrigation water."

No. 37698-2-III
*Hansen v. Moses Lake Irrig. & Rehab. Dist., et al.*

RCW 87.03.445(2). Mr. Hansen cross appeals the trial court's rejection of two of his voting or assessment-related claims and its denial of his request for an award of attorney fees. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In 1928, landowners who described their lands as "susceptible of irrigation" and desired to organize an irrigation district in Grant County, petitioned the board of county commissioners for approval of such a district for "all of the purposes mentioned in Section 7417 of the Supplement to Remington and Ballinger's Code." Clerk's Papers (CP) at 1837. They identified those purposes as

l. For the construction or purchase of works, or parts of same, for the irrigation of lands within the operation of the district[,]

2. The reconstruction, repair, improvement of existing irrigation works[,]

3. The operation or maintenance of existing irrigation works[,]

4. The construction, reconstruction, repair or maintenance of a system of diverting conduits from a natural source of water supply to the point of individual distribution for irrigation purposes[,]

5. The execution and performance of any contract authorized by law with any department of the federal government or of the State of Washington, for reclamation and irrigation purposes[, and]

6. The performance of all things necessary to enable the district to exercise the powers herein granted.

*Id.* The plan of improvement contemplated was "the construction of a permanent dam at the outlet of Moses Lake for the purpose of catching and holding all of the waters flowing into said Moses Lake." *Id.* at 1838.

3

Creation of the Moses Lake Irrigation District was approved, and it obtained a water right that has been certified to be up to 50,000 acre-feet, for the irrigation of 11,213 acres within the district. Laws governing the operation of irrigation districts are now codified at chapter 87.03 RCW. As relevant to this appeal, which involves the authority to raise funds, irrigation districts may do so in three ways: they may make assessments "in proportion to the benefits accruing to the lands assessed" under RCW 87.03.240, or "fix reasonable rates or tolls and charges, and collect the same from all persons for whom district service is made available for irrigation water, domestic water, electric power, drainage or sewerage, and other purposes," or employ both rates or tolls or charges and assessment. RCW 87.03.445(2).

For decades, the District assessed its landowners based on acreage. Historical records reveal that between 1940 and 1946, the assessments ranged from $0.15 per acre to $1.00 per acre.

The District has never constructed any pumps, canals, or pipelines for delivering irrigation water from Moses Lake to district members. Instead, landowners are responsible for building any system to deliver water to their individual properties, and some members of the District have done so. In this respect, plaintiff Hansen, a

landowner in the District and who served for approximately two years as a director, believes it operates differently from other irrigation districts. He contends that other irrigation districts *do* have water delivery systems. The District does not monitor who is taking water from the lake for irrigation purposes or charge them for taking water. Lake water can be taken by anyone, for free.

In 1961 and 1963, legislation was passed and amended that allowed any irrigation district that had the major portion of an inland navigable body of water within its exterior boundaries, and that had been granted rights to 50,000 acre-feet of water or more, to become an "irrigation and rehabilitation" district. LAWS OF 1961, ch. 226, §§ 1-8; LAWS OF 1963, ch. 221, §§ 1-11. The legislation was reportedly sponsored by Mr. Hansen's uncle, Tub Hansen. The District supported the legislation. Its records reflect its concern in 1962 that "'the farmers within the boundaries of the . . . District are presently irrigating only about 3,000 acres of land and some of this land is being converted from farm land to residential and other land uses.'" CP at 1508-09. It recognized a "'real danger of the lake being reduced to an elevation from its present level[,] which would be disadvantageous to the people and property owners of the . . . District,'" given that the lake provided "an abundance of opportunity for recreation associated with water and water sports, all of which has a definite influence on the value of homes and properties with[in] the boundaries of the . . . District." CP at 1509.

The legislation provided that in addition to their irrigation purposes, irrigation and rehabilitation districts could be organized and maintained "to further the recreational potential of the area and to further the rehabilitation or improvement of inland lakes and shore lines . . . to further the health, recreation, and welfare of the residents in the area." LAWS OF 1963, ch. 221, § 3. It provided that the directors of an irrigation and rehabilitation district, in addition to retaining their authority as directors of an irrigation district, were authorized to "specially assess land located in the district for benefits thereto," providing that such assessment "shall not exceed one mill [$1 per $1,000 of assessed value] upon such assessed valuation without securing authorization by vote of the electors of the district." LAWS OF 1961, ch. 226, § 8.[1] The provisions governing irrigation and rehabilitation districts are codified in chapter 87.84 RCW.

---

[1] In 1963, the legislature adopted the following statement of purpose for the creation of such districts:

> The growing population of the state of Washington, coupled with increasing amounts of available leisure time have greatly expanded the need for and use of the larger lakes in the state of Washington, both by Washington state residents and guests from other states and countries. In order to make the use of such larger lakes safer, and more beneficial to all concerned, the state of Washington to further the health, safety, recreation and welfare of its citizens has authorized the conversion of certain irrigation districts to irrigation and rehabilitation districts.

LAWS OF 1963, ch. 221, § 1, codified at RCW 87.84.005.

With the approval of the Grant County Commissioners, the District became, and it remains, the only irrigation and rehabilitation district in the State of Washington. Following its conversion to an irrigation and rehabilitation district, its directors voted to set the levy at the one mill limit they were authorized to assess without a vote of District electors.

In 1973, the legislature reduced the amount the directors of an irrigation and rehabilitation district can specially assess for recreational and rehabilitation benefits without a vote of the electors. It was reduced to $0.25 per $1,000.00 of assessed value. LAWS OF 1973, 1st Ex. Sess., ch. 195, § 132. That remains the limit today. RCW 87.84.070. The directors deemed more than that to be needed for District operations and continued to specially assess properties located based on their property (land and improvement) value, without securing approval of the District electors.

In performing audit work in 2012, staff of the state auditor questioned whether it was allowable for the District to assess property owners based on assessed valuation, given RCW 87.03.240's language that assessments "shall be made in proportion to the benefits accruing to the lands assessed." CP at 1462. The District's response, according

to audit records, was that "all property owners have the same benefits because each of them have the legal right to request water be provided to them (with the understanding that the cost of infrastructure would be borne by the property owner)," and in the District's view, "all benefits were equal." *Id.*

Audit staff looked at the issue again in 2013, and one staffer compiled a spreadsheet that identified parcels within the District as commercial, residential and agricultural and calculated their assessment per acre—the assessment approach followed through (at least) 1946. Audit staff determined that

> [c]ommercial lots with little-to-no need for irrigation water are paying $500-$1,000 per acre, residences that can use irrigation water for their lawns are paying $100-$600 per acre, and large agricultural/potential-agricultural parcels are paying less than $100 per acre.

*Id.* No adverse audit finding was made, however, based on a legal opinion from the District's counsel, accepted by the state auditor, that irrigation districts are statutorily authorized to raise operating funds using rates, tolls, or charges that are not required to be benefit-based.

In 2014, Mr. Hansen commenced the action below against the District, its directors, Grant County (County) and the County's assessor, auditor, and treasurer. He complained that he had "been denied his constitutional right to vote in elections pertaining to the management and operation of the [District] and [his] property ha[d]

8

been improperly assessed taxes by [the District]." CP at 17.[2]  Mr. Hansen owns 15

parcels of real property within the boundaries of the District.  Although one parcel is a

lakefront property, none of his parcels draw water from Moses Lake or receive any

irrigation water from the District.

On the issue of illegal taxation, Mr. Hansen contended that the District was then

financing its operations by a flat, uniform assessment against all real property within its

boundaries, regardless of location or water use, at a rate of $1.00 per $1,000.00 of

assessed value.  It had never held an election for approval of an above-$0.25 per

$1,000.00 rate, and he alleged that to justify the amount being assessed, the District was

relying on the statutory powers granted to irrigation districts under chapter 87.03 RCW.

He contended that those statutes required that assessments for irrigation benefits "'shall

be made in proportion to the benefits accruing to the lands assessed,'" and the District

had never conducted any studies to determine the actual level of irrigation benefit

received by parcels or classes of property owners within the District.  CP at 20.  He cited

the fact that the District had never constructed or maintained a delivery system.  He

alleged it had not established any usage rates, tolls or charges for use of its 50,000 acre-

_____

[2] The original petition had named Michael and Chris Hansen, husband and wife, as plaintiffs, but an amended petition filed within a matter of weeks identified Michael Hansen as the only plaintiff.

feet of water; it did not undertake to regulate or control use of its water; and it had no records of the amount of water taken from the lake by users.

On the issue of voting rights, Mr. Hansen alleged that in 2010, the District adopted a resolution under which each eligible elector would have two votes for each parcel of assessable land. He learned after resigning as a director that the District's elected state representative, Judy Warnick, had received an attorney general's opinion that each landowner within the District should have two votes total, regardless of the amount of property owned.[3] He contended that the District's voting practice was contrary to law and "debas[ed] or dilute[ed]" his constitutionally protected voting rights. CP at 22.

Mr. Hansen's claims included federal civil rights claims under 42 U.S.C. § 1983, and the District removed the action to federal court. Nearly two years later, in October 2016, the district court remanded the case, finding that it lacked subject matter jurisdiction of the federal claim in light of the federal Tax Injunction Act, 28 U.S.C. § 1341, and was prevented from exercising supplemental jurisdiction over the state

---

[3] Rep. Warnick had asked the attorney general to analyze how votes are apportioned among District property owners by RCW 87.03.071, which turned out not to be the applicable statute.

claims. Critical to its decision was the district court's conclusion that the assessments being challenged were a tax, an issue it viewed as undisputed by the parties.

Following remand, the parties presented all of Mr. Hansen's claims for resolution as a matter of law in a series of summary judgment motions.[4]

*Voting claims*

On the voting-related claims, in March 2018, the trial court granted in part Mr. Hansen's request for declaratory relief that the District was employing an unlawful voting procedure. Chapter 87.03 RCW includes two provisions on voting procedure that could potentially apply to the District. If more than 50 percent of the total acreage of the district is owned in individual ownerships of less than five acres, RCW 87.03.071 provides that each elector is entitled to two votes, regardless of the size of ownership; otherwise, RCW 87.03.051 applies and provides two votes for each five acres of assessable land or fraction thereof. Mr. Hansen's initial submissions failed to

---

[4] Also following remand, in January 2018, the District provided Grant County Treasurer Darryl Pheasant with a copy of its assessment roll so that Mr. Pheasant, who is designated by RCW 87.03.440 as the District's ex officio treasurer, could send statements of assessment to District members. Mr. Pheasant was aware of Mr. Hansen's lawsuit. Having learned that the federal court had remanded the lawsuit after finding that the District's assessment methodology was a tax, Mr. Pheasant refused to send the statements based on his belief that the District lacked taxation authority.

On or about March 13, 2018, the District petitioned for a writ of mandamus requiring Mr. Pheasant to send statements of assessment to its members. Both cases were assigned to Judge David Estudillo, who first addressed most of the common legal issues in this case.

demonstrate sufficiently clearly whether more than 50 percent of the total acreage comprised individual ownerships of less than five acres, but as the trial court explained in its letter ruling, the voting method then being followed by the District did not comply with either statute.

In March 2020, based on information on the District electors obtained from the county assessor, the trial court entered a declaratory judgment, ordering the District to apply and follow the voting calculation, allocation, and procedures set forth in RCW 87.03.051 in all further District elections.

*Section 1983 claims*

In March 2018, the trial court denied Mr. Hansen's motion for summary judgment on his "unlawful tax"-related claim under 42 U.S.C. § 1983, explaining that Mr. Hansen's allegations of illegality were based on state statutes, and a violation of rights guaranteed by the state constitution or state law is not actionable under § 1983. The court rejected the federal guarantee of due process as the basis for the § 1983 claim, since, if the District's assessments were illegal taxes, there were statutory mechanisms for recovery.

In ruling in January 2020 on cross motions for summary judgment, the trial court granted the District's motion to dismiss Mr. Hansen's voting-related § 1983 claim. As relevant to the appeal, it ruled that Mr. Hansen could not demonstrate a violation of equal

protection as a basis for a § 1983 claim, because a Washington statute that allocated

somewhat greater voting power to electors with larger landholdings was constitutionally

defensible, and the District's practice had distributed voting power even more equally

than called for by the statute.

*Assessment challenge not based on § 1983*

In ruling on the District's motion for summary judgment and Mr. Hansen's cross

motion in January 2020, the trial court observed that the District had not addressed a

request for declaratory judgment on the assessment challenges that the court perceived to

have been raised by Mr. Hansen, and it ordered supplemental briefing.[5] The District's

supplemental briefing made two arguments. It first contended that its method of

assessment did not violate RCW 87.03.445. It argued that its use of rates or tolls and

charges is authorized, and, if it was deemed to be imposing an assessment, then it

reasonably found that all of its electors received a 100 percent benefit. Second, the

District argued that Mr. Hansen lacked standing to challenge the assessment under

Washington's anti-injunction act because he had not paid the District's assessments under

protest.

---

[5] The court directed the parties to "address whether plaintiff may obtain a declaratory judgment under the Second Cause of Action if the District's current method of assessment/tax violates RCW 87.03.445." CP at 1500.

13

In an order filed on June 1, 2020, the trial court granted Mr. Hansen's request for a declaratory judgment on the application of RCW 87.03.445. Citing the District's complete lack of information about irrigation use of its water, the court stated it "could only conclude the current 'tax' rate levied against plaintiffs' property under RCW 87.03.445(2) and (4) was not 'reasonable', and otherwise excessive and disproportionate to the services rendered, in violation of RCW 87.03.445." CP at 2162-63. It also concluded that for Mr. Hansen's real property that is not situated adjacent to Moses Lake, he was not a person for whom district service is made available for irrigation water, domestic water, electric power, drainage or sewerage, and other purposes. Accordingly, it ruled that the District may not levy or fix rates or tolls and charges against Mr. Hansen's property not adjacent to the lake, and was required to fix "reasonable" rates or tolls and charges for his property adjacent to Moses Lake before attempting to levy them under RCW 87.03.445(2) and (4).[6]

The District filed a motion for reconsideration, which was denied. The District appealed the June 1, 2020 order granting summary judgment and declaratory judgment and the order denying its motion for reconsideration.

---

[6] The court expressly "[made] no ruling regarding the .25 mill assessment defendant Moses Lake Irrigation and Rehabilitation District has been levying against plaintiffs' land within the Moses Lake Irrigation and Rehabilitation District for rehabilitation services pursuant to RCW 87.84.070." CP at 2163.

14

Mr. Hansen filed a motion for costs and attorney fees, which the court denied. Mr. Hansen cross appealed the June 1, 2020 order and the June 1, 2018 order denying in part and granting in part his motion for summary judgment.

ANALYSIS

APPEAL

The District makes eight assignments of error that we analyze as presenting three issues. The first issue is whether the trial court erred in denying summary judgment on the basis that RCW 84.68.010, Washington's tax anti-injunction act, applies and deprived the trial court of subject matter jurisdiction and Mr. Hansen of standing. The second issue is whether the trial court erred in granting summary judgment that properties in the District that are not adjacent to Moses Lake are not assessable, since district service for irrigation water is not "made available" to them. The third issue is whether the trial court erred in granting summary judgment that properties adjacent to the reservoir are not assessable at rates that, based on the record, are not reasonable.

We engage in the same inquiry as the superior court when reviewing a summary judgment order. *Lakehaven Water & Sewer Dist. v. City of Fed. Way*, 195 Wn.2d 742, 752, 466 P.3d 213 (2020). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). An order granting summary judgment may be affirmed on any legal basis

15

supported by the record. *Martinez-Cuevas v. DeRuyter Bros. Dairy*, 196 Wn.2d 506, 514, 475 P.3d 164 (2020). As the trial court observed, while it resolved Mr. Hansen's claims on the basis of two principal issues, many other legal issues were raised in connection with the parties' requests for relief.

Almost all of the issues raised pertain to constitutional limitations and statutory authority; those are issues of law to be determined de novo by this court. *Okeson v. City of Seattle*, 150 Wn.2d 540, 548-49, 78 P.3d 1279 (2003). When interpreting a statute, our "fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). When determining legislative intent, we examine "the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found." *Id.* at 10. We must avoid constructions that would yield unlikely, absurd, or strained consequences. *Killian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002). Statutes are presumed constitutional. *State v. Batson*, 196 Wn.2d 670, 674, 478 P.3d 75 (2020) (citing *State v. Watson*, 160 Wn.2d 1, 11, 154 P.3d 909 (2007)), *review denied*, 197 Wn.2d 1021, 489 P.3d 257 (2021). Wherever possible, it is the duty of the court to construe a statute so as to uphold

its constitutionality. *Id.* (citing *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008)).

I.    CHAPTER 84.68 RCW DOES NOT FORECLOSE A LEGAL CHALLENGE TO THE DISTRICT'S ASSESSMENTS

The District assigns error to the trial court's rejection of its argument that the tax anti-injunction act codified in chapter 84.68 RCW applies to Mr. Hansen's challenge to District assessments, depriving him of standing and the trial court of subject matter jurisdiction.

*Taxes vs. fees*

Title 84 RCW deals with property taxes. Chapter 84.04 RCW defines terms, and states that "[u]nless otherwise expressly provided or unless the context indicates otherwise, terms used in this title shall have the meaning given to them in this chapter." RCW 84.04.100 defines "'tax' and its derivatives, 'taxes,' 'taxing,' 'taxed,' 'taxation' and so forth" to mean "the imposing of burdens upon property in proportion to the value thereof, for the purpose of raising revenue for *public purposes*." (Emphasis added.) A requirement that taxes shall be levied and collected for "public purposes only" is constitutional. WASH. CONST. art. VII, § 1. "'An expenditure is for a public purpose when it confers a benefit of reasonably general character to a significant part of the public.'" *CLEAN v. State*, 130 Wn.2d 782, 793, 928 P.2d 1054 (1996) (quoting *In re Marriage of Johnson*, 96 Wn.2d 255, 258, 634 P.2d 877 (1981)).

17

Based on this constitutional limitation, taxes have been described colloquially as compulsory payments that can be "imposed anywhere and used for anything," so long as "the imposition is 'fair.'" Hugh D. Spitzer, *Taxes vs. Fees: A Curious Confusion*, 38 GONZ. L. REV. 335, 337 (2003) (capitalization omitted). "Because taxpayers have no guarantee that their dollars will directly benefit them, a number of protections have evolved to assure fairness in the distribution of the tax burden." *Id.* at 340. The Washington Constitution imposes fundamental constitutional constraints on governmental taxation authority: the "all-important tax uniformity requirement"[7] and the one percent ceiling.[8] *Samis Land Co. v. City of Soap Lake*, 143 Wn.2d 798, 805, 23 P.3d 477 (2001).

The District admits it lacks authority to impose property taxes. *See* Opening Br. of Appellants at 17 n.59 (asserting that "assessments are a form of taxation but are different in character from a property tax"). Instead, it is authorized by RCW 87.03.240 to make

---

[7] "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax . . . . All real estate shall constitute one class . . . ." WASH. CONST. art. VII, § 1.

[8] "Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one percent of the true and fair value of such property in money." WASH. CONST. art. VII, § 2.

"assessments" in proportion to benefits and by RCW 87.03.445(2) to fix and collect "reasonable rates or tolls and charges" from persons to whom district service is made available. Because assessments based on benefits and rates, tolls, or charges for delivery of a service are not taxes, they are exempt from the constitutional constraints on taxation authority.

Given the inherent danger that legislative bodies might circumvent constitutional constraints by levying charges that, while officially labeled something else in fact possess all the basic attributes of a tax, "[c]ourts must . . . look beyond a charge's official designation and analyze its core nature by focusing on its purpose, design and function in the real world." *Samis*, 143 Wn.2d at 806. Three factors analyzed for this purpose are referred to as the "*Covell* factors," based on *Covell v. City of Seattle*, 127 Wn.2d 874, 879, 905 P.2d 324 (1995), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019), the decision in which they were consolidated as a three-part test. The factors have been broadened in later cases, which have recognized that a "tax" versus "regulatory fee" dichotomy identified in *Covell* failed to account for the full spectrum of government charges that, while not regulatory fees, are also not taxes. *See, e.g.*, *City of Snoqualmie v. Constantine*, 187 Wn.2d 289, 300, 386 P.3d 279

(2016) (Government imposed user charges can include "commodity charges, burden offset charges, and special assessments," and these, too, are not taxes.).

A governmental charge that is not subject to the constitutional constraints on governmental taxation but is determined under the three-factor analysis to be a "tax[ ] in disguise" or a "tax in fee's clothing" will be held invalid. *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 371, 373, 89 P.3d 217 (2004). Where, as here, a charge is challenged as an unauthorized tax, the usual approach to defending is to argue that it does *not* have the characteristics of a tax. *E.g.*, *Samis*, 143 Wn.2d at 807-14; *Carillo v. City of Ocean Shores*, 122 Wn. App. 592, 604-08, 94 P.3d 961 (2004); *Arborwood*, 151 Wn.2d at 371-73; *and City of Snoqualmie*, 187 Wn.2d at 300-03.

In this case, the District has boldly taken a different tack: it has argued that its uniform rate imposed on the assessed valuation of District properties *is* a tax, and on that basis, that chapter 84.68 RCW presents an insuperable bar to any challenge. This presents a question of first impression: if legislative overreach in collecting charges that are not statutorily authorized taxes results in their being *unauthorized, unconstitutional* taxes, do they acquire anti-injunction protection?

20

No. 37698-2-III
*Hansen v. Moses Lake Irrig. & Rehab. Dist., et al.*

> *The District action challenged by Mr. Hansen is its making of assessments;*
> *it lacks any authority to levy or collect taxes*

The threshold question in determining whether the anti-injunction act applies to Mr. Hansen's action is whether he is challenging a tax.[9] RCW 84.68.010 provides, subject to exceptions, that injunctions and restraining orders shall not be issued or granted to restrain "the collection of any *tax* or any part thereof." (Emphasis added.) RCW 84.68.020 provides that in the case of the "levy of *taxes for public revenue* which are deemed unlawful or excessive by the person, firm or corporation whose property is taxed," the taxpayer may pay the *tax* under written protest and then bring an action to recover the *tax* paid under protest. (Emphasis added.) RCW 84.68.070 provides that recovery of taxes paid under protest and chapter 84.69 RCW provide the exclusive remedy to attacking the validity of any *tax*. The District argues that paying the District's

---

[9] We ignore the federal district court's decision that the District assessment was a tax under the federal Tax Injunction Act, for two reasons. One is that in determining whether the Tax Injunction Act, 28 U.S.C. § 1341, bars federal jurisdiction over a suit challenging a state assessment, the court determines whether the assessment at issue is a tax or a regulatory fee as a matter of *federal law. Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1311 (10th Cir. 1999) (citing *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987)). How the assessment would be characterized under the relevant state's law is not dispositive. *Id.* (citing *Wright*, 835 F.2d at 144; *accord Cumberland Farms, Inc. v. Tax Assessor*, 116 F.3d 943, 946 (1st Cir. 1997)).

A second and even more important reason is that the federal court treated the issue as undisputed. *See* CP at 39-40 (observing that Mr. Hansen maintained that the District was imposing a tax and the District agreed that its assessments were taxes). The federal court's remand order states conclusorily that a federal law analysis would also direct a finding that the assessment is a tax, but the court never undertook the analysis. *See id.*

assessments under protest and challenging their validity under chapter 84.68 RCW was

Mr. Hansen's exclusive remedy.

The District actions being challenged by Mr. Hansen were its setting

"assessments," not "taxes," which is all it is statutorily authorized to do under chapter

87.03 RCW. *See, e.g.*, CP at 182-87 (notices to the Grant County assessor of

"assessments"); CP at 1479 (District counsel's reliance on RCW 87.03.270 as the basis

for the county treasurer's obligation to "send a statement of assessments due"). Although

an irrigation district has broad authority to develop and maintain a system for delivery of

irrigation water and generation of electricity, "it is not empowered to impose ad valorem

property or sales taxes." *Foster v. Sunnyside Valley Irrig. Dist.*, 102 Wn.2d 395, 410,

687 P.2d 841 (1984).

The District cites authorities that its assessments are *akin* to a tax, but the same

authorities recognize that they are not, strictly speaking, taxes.[10] As observed in *Carillo*,

---

[10] *See Bd. of Dirs. of Middle Kittitas Irrig. Dist. v. Peterson*, 4 Wash. 147, 152-53, 29 P. 995 (1892) (Residents of the district "pay taxes, it is true, or an assessment in the nature of a tax, but it is not for the benefit of the community at large within such districts, but for the special benefit of the owners of real estate situated therein, and is proportioned to the benefits which they are to receive from the improvement. In a certain sense, no 'tax,' in the ordinary use of that word, is imposed."); *and see In re Riverside Irrig. Dist.*, 129 Wash. 627, 633, 225 P. 636, *modified on other grounds sub nom. Bd. of Dirs. of Riverside Irrig. Dist. v. Cummings*, 131 Wash. 532, 230 P. 649 (1924) (Observing that under prior law, irrigation districts "came nearer possessing power of general taxation than they do now," and "We find nothing in the statute as it now exists, or has existed since 1915, conferring upon irrigation districts any general power of taxation apart from the consideration of benefits.").

for "taxes" in a broad, generic sense, "'[p]ayment under protest' of a tax is not required for a refund of an illegal tax, unless required by statute." 122 Wn. App. at 611 (citing cases, and distinguishing them from RCW 84.68.020's requirement that *property taxes* be paid under protest); *Hillis Homes, Inc. v. Snohomish County*, 97 Wn.2d 804, 811, 650 P.2d 193 (1982) (county development fee determined to be an unauthorized tax was required to be refunded "even though the fees were not paid under protest").

The District has never been statutorily authorized to levy or collect taxes within the meaning of RCW 84.04.010, which is the controlling legislative definition for purposes of chapter 84.68 RCW. *Reg'l Disposal Co. v. City of Centralia*, 147 Wn.2d 69, 77, 51 P.3d 81 (2002). Accordingly, the "tax" anti-injunction provisions do not apply. *See id.*

This is the plain meaning of the relevant statutes. Chapter 84.68 RCW speaks only of challenges to actual "taxes." Chapter 87.03 RCW speaks only of District authority to make "assessments."

Finally, the District's construction of chapter 84.68 RCW as applying to what are statutorily authorized only as fees, but through legislative overreaching amount to unauthorized, unconstitutional taxes, would lead to absurd results. If a District assessment was excessive or invalid for some reason short of being an unconstitutional tax, it could be challenged without first making payment under protest. Only in the

egregious case of the District assessing an unconstitutional fee having the characteristics of a tax would chapter 84.68 RCW present an obstacle. That makes no sense.

The trial court reached the correct result in rejecting the District's arguments that Mr. Hansen lacked standing and the court lacked subject matter jurisdiction.

II.     THE TRIAL COURT DID NOT ERR IN RULING AS A MATTER OF SUMMARY JUDGMENT THAT FOR NONRESERVOIR-ADJACENT PROPERTIES, DISTRICT SERVICE IS NOT "MADE AVAILABLE" FOR IRRIGATION WATER

The language on which the District relies for authority for its assessments is that it "may . . . fix reasonable rates or tolls and charges, and collect the same from all persons for whom district service is *made available* for irrigation water." RCW 87.03.445(2) (emphasis added). As the trial court observed, the District's position is that by maintaining a reservoir, irrigation water service is being "made available" because Mr. Hansen can draw irrigation water from the lake for his one parcel that is adjacent to the lake, and use a container to transport water from the lake to his nonadjacent parcels. Mr. Hansen's position is that no irrigation water service is "made available" to him because the District operates no delivery system and his ability to draw water from a public access point is no different from that of members of the public who are not District members.

The trial court construed the phrase "for whom district service is made available for irrigation water" by looking to case law; specifically, to *Otis Orchards Co. v. Otis Orchards Irrigation District No. 1*, 124 Wash. 510, 215 P. 23 (1923), and *Northern*

24

*Pacific Railway Co. v. Walla Walla County*, 116 Wash. 684, 200 P. 585 (1921). As the trial court observed, in *Otis Orchards*, the appellant challenged its liability for irrigation district assessments against its unimproved land and the land on which it grew wheat without irrigation. 124 Wash. at 512. The irrigation district had a piped delivery system to all of the appellant's lands, from which it could draw water at any time, making "'water . . . available whenever the appellant sees fit to use it.'" CP at 2178 (quoting 124 Wash. at 511). The trial court relied on the *Otis Orchards* court's holding that "'[i]t is generally understood that the land within a district is benefited by an irrigation system to the extent that the added facilities for irrigation add to the value of the land itself, and this does not depend upon the use the owner may make of the water.'" *Id.* (quoting 124 Wash. at 513). The trial court observed that "[i]t follows that the land was more marketable and of increased value because irrigation water could immediately be delivered to it." CP at 2179.

By contrast, the trial court observed, in *Northern Pacific Railway*, the railroad successfully challenged charges imposed on land owned in an irrigation district that was not capable of being benefitted by irrigation, given its nature and topography. *Id.* The trial court cited the court's rejection of the county's argument that "'the mere fact that the land happens to be within the boundaries of the district necessarily means it is capable of receiving benefit from the maintenance of the irrigation system of the district,'" and its

holding that the railroad was not liable to contribute toward maintenance of the system.
*Id.* (quoting *N. Pac. Ry.*, 116 Wash. at 688).

We review a trial court's summary judgment decision de novo, of course. And Mr. Hansen challenged the District's assessments as unauthorized ad valorem taxes. Cases applying the *Covell* factors are controlling in determining whether a charge can be justified as a constitutional fee rather than as an unconstitutional tax, so they are obviously important in construing RCW 87.03.445(2). We presume the legislature intended to authorize irrigation districts to fix constitutional rates or tolls and charges, not unconstitutional taxes. We construe irrigation district authority to make assessments with that in mind. *See Batson*, 196 Wn.2d at 674 (Statutes are presumed constitutional and will be construed, wherever possible, to uphold their constitutionality.).

The first *Covell* factor is whether the primary purpose in imposing the assessment is to accomplish a public benefit that costs money or whether its primary purpose is to pay for a regulatory scheme, a particular benefit conferred on District landowners, or mitigation of a burden caused by District landowners. *Arborwood*, 151 Wn.2d at 371.

> If the primary purpose is to raise revenue used for the desired public benefit, the charges are a tax. If the primary purpose is to regulate the fee payers—by providing them with a targeted service or alleviating a burden to which they contribute—that would suggest that the charge is an incidental tool of regulation.

*Id.* (citing *Samis*, 143 Wn.2d at 806-07; *Covell*, 127 Wn.2d at 879).

26

The second factor is whether the money collected must be segregated and allocated *only* to the authorized purpose. *Id.* at 372. "If the money must be allocated only to the authorized purpose, the charge is considered to be a fee." *Id.* (citing *Samis*, 143 Wn.2d at 809). This second factor "requires that 'regulatory fees' be 'used to regulate the entity or activity *being assessed.*'" *Samis*, 143 Wn.2d at 810.

The third *Covell* factor is whether there is a direct relationship between the fee charged and the service received by those who pay the fee or between the fee charged and the burden produced by the fee payer. *Arborwood*, 151 Wn.2d at 372-73 (citing *Samis*, 143 Wn.2d at 806; *Covell*, 127 Wn.2d at 879). "If no such relationship exists, the charge is probably a tax in fee's clothing." *Id.* If a direct relationship *does* exist, the charge may be a fee even if the charge is not individualized to the benefit or burden associated with each fee payer. *Id.*

Applying these factors, controlling case law holds that "standby" or "availability" charges for a service that is not yet being provided or is otherwise not demonstrably beneficial are unauthorized taxes, not fees. This was the result in *Samis*, which involved a challenge to Soap Lake's flat-rate annual charge on any vacant, unimproved land abutting a line providing water or sewer service but which had no connection thereto. 143 Wn.2d at 814. It was the result in *Arborwood*, in which Kennewick collected the same monthly charge for ambulance service from every household, business and industry

27

within the city served by its emergency medical and ambulance services irrespective of use or need for the service. 151 Wn.2d at 373. It was the result in *Carillo*, in which water and sewer availability charges were collected from owners of vacant lots unconnected to city systems. 122 Wn. App. at 608-09.

These cases teach that for the District's revenue-raising approach of collecting reasonable rates from persons for whom district irrigation service is "made available" to be constitutional, RCW 87.03.445(2) must be construed to authorize assessment of only those persons who are connected to a district irrigation water delivery system. The trial court reasonably ruled that with respect to Mr. Hansen's parcels that are not adjacent to the lake, he is not a person for whom district service is made available for irrigation water within the meaning of RCW 87.03.445(2).

III.    THE TRIAL COURT DID NOT ERR IN RULING AS A MATTER OF SUMMARY JUDGMENT THAT THE DISTRICT ACTED ARBITRARILY AND CAPRICIOUSLY IN MAKING ITS RATE-BASED ASSESSMENTS

In the case of Mr. Hansen's challenge to the District's assessment of his one lakefront parcel, the trial court focused on the District's statutory authority to fix "reasonable" rates or tolls and charges and collect them from persons for whom district irrigation water service is made available. RCW 87.03.445(2).

Mr. Hansen's complaint alleged that the District had not conducted any studies, held public hearings or otherwise sought to determine the benefit of its operations to

28

landowners and its actions in setting and maintaining assessments "are arbitrary and capricious and a violation of state law." CP at 21. In the course of the summary judgment motion practice, he argued that there were material disparities in water use by property owners within the District that had never been taken into consideration in making assessments; that Board minutes and correspondence revealed that when changes were made in assessment amounts or approaches, no economic basis for the change was ever offered; and that the District's attribution of an exactly equal assessment rate to every nonexempt property in the District was an indefensible determination of benefit.

The trial court's memorandum decision made a number of observations about undisputed facts relevant to this issue:

- Some properties within the District, including properties owned by Mr. Hansen, were not used as farmland and did not use irrigation water;

- Members of the District remained responsible for installing and maintaining works to draw water from the lake for irrigation;

- Since some of Mr. Hansen's properties within District boundaries had no ability to pump irrigation water from the lake because they lacked necessary easements, they sat in no better position than properties owned by Mr. Hansen situated outside District boundaries;

- While the summary judgment record included many Board minutes and the District's February 22, 2013 defense of its assessment approach to the state auditor, the District's lawyer admitted he was unaware of anything in the record documenting a discussion of the basis on which the District deemed its rates to be "reasonable";

- The District's February 2013 defense of its rates acknowledged that "in any particular year, it would be impossible to prove that general maintenance benefits any specific property to any specific value, let alone the proportion to which a

particular property is benefitted compared to other properties in other portions of the system," *see* CP at 1468;

- The record was devoid of any discussion of why the District decided to shift from assessing members for benefits under RCW 87.03.240 to taxing members at a rate under RCW 87.03.445, or how it determined the rate;

- Once it became an irrigation and rehabilitation district, the District's records reflect that the basis for its $1.00 per $1,000.00 of assessed value assessment was based on what was "allowable" by statute, and in later years, minutes reflect only a decision to increase or decrease the rate it would impose on assessed value, with no indication why that reflected benefit or was otherwise reasonable; and

- The fact that maintaining Moses Lake for *recreational* purposes has been a key focus of District operations raised further questions about the reasonableness of the rates it imposes in reliance on its authority as an irrigation district.

From these facts, the trial court ruled it "can only conclude the tax has been imposed without consideration and regard to the facts or circumstances of the plaintiff's land and the District's 'irrigation' services." CP at 2185.

By statute, where an irrigation district bases its assessments on fixing and collecting a rate from persons for whom it makes irrigation service available, the rate must be "reasonable." RCW 87.03.445(2). By negative implication, the assessment of any "rate" is subject to RCW 87.03.240(1). *See* RCW 87.03.445(4) (providing that only tolls and charges—not rates—are not subject to RCW 87.03.240(1)).

To be constitutional, such rates must qualify as fees, not taxes, under the *Covell* factors, which independently require a direct, reasonable relationship between the fee imposed and either a service provided to the fee payer or a fee payer harm mitigated.

30

The trial court recognized that because the setting of rates is a legislative function, courts review it under the "arbitrary and capricious" test. *Teter v. Clark County*, 104 Wn.2d 227, 234, 704 P.2d 1171 (1985) (citing *Tarver v. City Comm'n of Bremerton*, 72 Wn.2d 726, 731, 435 P.2d 531 (1967)). "Arbitrary" action is "'wilful and unreasoning action, without consideration and regard for facts and circumstances.'" *Id.* at 237 (quoting *Miller v. City of Tacoma*, 61 Wn.2d 374, 390, 378 P.2d 464 (1963)).

In *Teter*, landowners challenged water management charges imposed by the county on properties deemed to contribute to surface water runoff. The charges were based on "formulae devised after studies of engineering reference material, aerial photographs, contour maps, and on-site examinations of some of the properties." *Id*. The properties were classified for purposes of computing charges based on the hydrologic impact of the development and use of the properties upon the peak rates of runoff, total quantity of runoff, and water quality impacts. *Id.* Charges were determined according to engineering knowledge on the ratio of pervious to impervious land in four development categories. *Id.*

The landowners argued that the charges arrived at were arbitrary and capricious merely because no consideration was given to the individual characteristics of each of the properties charged. *Id.* The court held that the county's rate schedule bore a reasonable relation to the contribution of each lot to surface runoff:

> Respondents are not required to *measure each* residential lot to ascertain the *exact* amount of impervious surface on each one. Absolute uniformity in rates is not required. The rates for each class must be internally uniform, but different classes may be charged different rates. Further, only a *practical* basis for the rates is required, not mathematical precision.

*Id.* at 238 (citations omitted). The court observed that the county "submitted numerous documents which show how and why the rate schedule was devised." *Id.* It held that the landowners had not "prove[d] that respondents acted in a willfully unreasonable manner, without regard to facts and circumstances, by merely asserting that the rates are arbitrary because respondents did not *individualize each rate.*" *Id.*

The District's refusal to conduct any review or analysis in imposing its rate is, by contrast, a paradigm of "wilful and unreasoning action, without consideration and regard for facts and circumstances." *Id.* at 237. After the legislature reduced the amount the District could assess for its lake improvement and rehabilitation services, and in light of its members' diminished need for irrigation service, the District could have sought approval from its electors of a higher rehabilitation assessment. It could have analyzed to whom it was making or could make irrigation service available, at what defensible, "reasonable," rate. What it could *not* do is simply continue business as usual and ensure itself an undiminished revenue stream by ratcheting up a uniform "irrigation service" rate on assessed value and charging it to irrigation users and nonusers alike.

Summary judgment on this issue was properly granted.

No. 37698-2-III
*Hansen v. Moses Lake Irrig. & Rehab. Dist., et al.*

CROSS APPEAL

Mr. Hansen cross appealed the trial court's June 1, 2018 order denying in part and granting in part his motion for summary judgment, and the court's June 1, 2020 order granting his motion. He makes three assignments of error that we address in turn.

I.     THE TRIAL COURT'S SUMMARY JUDGMENT DISMISSAL OF MR. HANSEN'S
       § 1983 CLAIM ALLEGING A VIOLATION OF HIS RIGHT TO EQUAL PROTECTION
       IN VOTING WAS NOT APPEALED

Mr. Hansen's first assignment of error is that the trial court erred by dismissing his § 1983 claim that RCW 87.03.051 violates the equal protection clause of the Fourteenth Amendment to the United States Constitution by allocating greater voting power to District electors with larger landholdings. Mr. Hansen contended that voting should be allocated on the basis of one person, one vote. The trial court's letter ruling on January 15, 2020, ruled that this § 1983 claim failed as a matter of law. It reasoned that because the District is a special purpose district whose activities are largely nongovernmental in nature, RCW 87.03.051 is constitutionally defensible. *See Foster*, 102 Wn.2d at 403-11. It observed, moreover, that the District's practice had distributed voting power even more equally than called for by that statute. The court's order granting summary judgment on that basis was entered on February 3, 2020.

As argued by the District, Mr. Hansen did not appeal the court's February 3, 2020 order.

33

In reply, Mr. Hansen argues that he *did* appeal the trial court's June 1, 2018 order, which denied his motion for summary judgment on his voting rights-related § 1983 claim. The denial of a summary judgment is not a final order and has no preclusive effect on further proceedings, however. *In re Estates of Jones*, 170 Wn. App. 594, 605, 287 P.3d 610 (2012). It does not end proceedings, but rather permits them to proceed. *Id.* The denial of a summary judgment motion is not a final order that can be appealed. *Id.* (citing *Zimny v. Lovric*, 59 Wn. App. 737, 739, 801 P.2d 259 (1990); *Roth v. Bell*, 24 Wn. App. 92, 104, 600 P.2d 602 (1979). Only final judgments are appealable. *See* RAP 2.2(a). The issue is not properly before us.

II. MR. HANSEN FAILS TO DEMONSTRATE THAT THE TRIAL COURT ERRED IN REFUSING TO RULE THAT A LEVY UNDER RCW 87.84.070 WAS VOID

Mr. Hansen's second assignment of error is that the trial court erred "by not making a finding that the [District] levy of an ad valorem tax was an ultra vires act not authorized by statute." Br. of Resp't at 13. His argument in support of the assigned error states:

> The $1.00/$1,000.00 levy imposed by [the District] against land and improvement[s] for real property in the district flagrantly violates the clear statutory language that it "shall not exceed twenty-five cents per thousand dollars of assessed value upon such assessed valuation without securing authorizations by vote of the electors of the district at an election called for that purpose." RCW 87.84.070. The levy is ultra vires and void.

34

Br. of Resp't at 46.  The District responds that it is unclear how this argument pertains to

Mr. Hansen's cross appeal.

RCW 87.84.070 has provided since 1973 that as an irrigation and rehabilitation

district, the District's directors

> shall be empowered to specially assess land located in the district for benefits thereto taking as a basis the last equalized assessment for county purposes: PROVIDED, That such assessment shall not exceed twenty-five cents per thousand dollars of assessed value upon such assessed valuation without securing authorization by vote of the electors of the district at an election called for that purpose.

LAWS OF 1973, 1st Ex. Sess., ch. 195, § 132.

Like the District, we are unable to determine how this relates to Mr. Hansen's

appeal, unless he is once again relying on a denial of summary judgment: in this case, the

court's June 1, 2020 denial of his motion for summary judgment on the issue of whether

the District *had* imposed an assessment of greater than $0.25 per $1,000.00 in violation

of RCW 87.84.070.  Again, a denial of summary judgment is not appealable.  And the

trial court explained it was denying that aspect of Mr. Hansen's motion based on the

parties' minimal briefing and an apparent question of fact as to how current assessments

were being allocated between irrigation and rehabilitation functions.

The District's position in the litigation has been that it imposes only $0.25 per

$1,000.00 in assessed value in reliance on its authority under RCW 87.84.070 and that

the balance of its assessment is made in reliance on its authority under RCW

35

87.03.445(2). Mr. Hansen's briefing points to nothing in the record that even suggests, let alone clearly establishes, that more than $0.25 per $1,000.00 in assessed value is being assessed by the District in reliance on its authority under RCW 87.84.070.

III.    THE TRIAL COURT DID NOT ERR OR ABUSE ITS DISCRETION IN DENYING MR. HANSEN'S MOTION FOR AN AWARD OF ATTORNEY FEES

Finally, Mr. Hansen argues that the trial court erred by denying his motion for an award of his attorney fees and costs on the basis of the common fund doctrine.

Washington follows the American rule, under which attorney fees are not awarded unless they are authorized by statute, contract, or a recognized equitable principle. *City of Seattle v. McCready*, 131 Wn.2d 266, 273-74, 931 P.2d 156 (1997). The common fund doctrine is one of the equitable exceptions to the American rule. *Id.* at 274. Under the doctrine, "a court is authorized to award attorney fees only when a litigant preserves or creates a common fund for the benefit of others as well as themselves." *City of Sequim v. Malkasian*, 157 Wn.2d 251, 271, 138 P.3d 943 (2006).

Mr. Hansen procured a declaratory judgment that may prove to benefit a class of persons beyond himself. But he has not shown that he has protected, preserved, or created an existing common fund from which reasonable attorney fees may be awarded. The trial court was presented with no evidence of the District's cash position or obligations at the time of Mr. Hansen's fee request that would enable it to conclude that a common fund existed from which an award was available and warranted. Having failed

No. 37698-2-III
*Hansen v. Moses Lake Irrig. & Rehab. Dist., et al.*

to protect, preserve or create an immediate fund from which reasonable attorney fees may be awarded, he was not entitled to such fees under a common fund theory. *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 542, 585 P.2d 71 (1978).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____          _____
Lawrence-Berrey, J.                                        Pennell, J.